In re Bonnie Maretta Lloyd WHEELER d/b/a W & S Company and Maretta Wheeler Agency, Debtor.

Shirley L. SLOCUM, Plaintiff,

v.

Bonnie Maretta Lloyd WHEELER, Defendant.

Bankruptcy No. 3–83–01437.

Adv. No. 3–83–0918.

United States Bankruptcy Court, E.D. Tennessee.

March 23, 1984.

Milligan, Coleman, Fletcher, Gaby & Kilday, G.P. Gaby, Greeneville, Tenn., for plaintiff.

Rogers, Laughlin & Nunnally, William S. Nunnally, Greeneville, Tenn., for defendant.

## MEMORANDUM

CLIVE W. BARE, Bankruptcy Judge.

Shirley L. Slocum, a creditor, seeks denial of discharge to the debtor, Bonnie Maretta Wheeler, alleging as grounds therefor the debtor's failure to explain satisfactorily "any loss of assets or deficiency of assets to meet the debtor's liabilities." 11 U.S. C.A. § 727(a)(5).

### I

The plaintiff and the debtor were associated in two business ventures in Greeneville, Tennessee. In January of 1980, the debtor formed a real estate agency for the purpose of engaging in the brokerage of

real estate in the name of Maretta Wheeler Agency. Plaintiff was associated with the Agency from the outset as an affiliate broker and as the bookkeeper. As bookkeeper, plaintiff kept a journal and recorded all monies received or disbursed from the business. In early 1979, the parties had formed a real estate partnership known as W & S Company for the purpose of buying, selling, managing, and engaging in speculative construction upon real estate. Plaintiff was an equal partner in the partnership and also served as the bookkeeper recording all receipts and disbursals.

The parties were also the closest of friends and the plaintiff was generally familiar with the personal affairs and financial pressures felt by the debtor outside of the business.

The W & S partnership was an unsuccessful venture. From its inception in 1979 and through the bankruptcy of the debtor in September of 1983, it lost money. Its 1981 tax return showed a loss for 1981 of $19,261.00, and its 1982 return showed a loss of $36,237.00. No return is available for 1983, but plaintiff concedes that it continued to lose money in 1983. It appears that the Greene County Bank financed the construction of two apartment houses for the partnership, with some $46,000.00 in interest being paid to the bank in construction interest on the two loans in 1980, 1981 and 1982 before conversion to permanent financing and before offsetting income was available to defray interest.

Maretta Wheeler Agency fared little better. Debtor paid $6,300.00 of her own funds into the Agency at the outset to capitalize the business (12–14–79) and borrowed an additional $20,000.00 and placed it into the Agency account within the first 3 weeks of business. Before doors were closed in April of 1983, the debtor put in an additional $4,000.00 on February 4, 1980, $1,200.00 on March 7, 1980, $2,500.00 on March 27, 1981, and $13,000.00 on December 19, 1981, for total cash infusions of

$47,000.00 by debtor. All of the cash infusions were borrowed funds except for the initial $6,300.00 contribution. From time to time she also made small cash contributions as needed which were not itemized.

Debtor testified that she was the sole source of support for her family during this period. She was funding her husband's money-losing schemes and supported two teenaged children who resided with her, and she claimed partial support of a third emancipated child.

The debtor's sources of income in the relevant period of 1980 through filing in 1983 were as follows:

|      | W & S Co. | Wheeler Agency & other |
|------|-----------|------------------------|
| 1980 | $7,830.75 | $11,000.00[1]          |
| 1981 | $1,702.11 | $11,267.79[1]          |
| 1982 | $1,714.49 | $14,948.19[1]          |
| 1983 | -0-       | $ 4,002.80             |

Her gross income for the period was therefore $52,466.13 from all sources.

Her personal expenses, for which she filed an itemized accounting for the same period, were $97,280.00. This figure does not include any direct payments of interest from loans negotiated from which the loan proceeds went directly to pay other bank obligations or to accounts other than those of her Agency or her personal account. Of these there were several, including $10,025.00 paid to W & S to capitalize the business from funds borrowed on October 31, 1980.

Her business expenses of the Agency for which she also filed an itemized accounting for the same period totaled $135,169.33. Her Agency income over the same period was shown to be $97,700.85.

Thus, the debtor is shown to have experienced negative cash flow of $37,468.48 in her business and at least $44,813.87 in her personal affairs. Again neither figure accounts for loan proceeds paid direct on existing obligations to lenders or deposits of loan proceeds into accounts other than

---

1. The amounts of personal income shown on summaries introduced by debtor for personal income were somewhat smaller for 1980–82, and the larger figures described orally by the debtor at her hearing are therefore used.

her personal or Agency accounts. Nor do these figures take into account the sizable losses being experienced by W & S during the same period.

The above figures were compiled by the debtor from her personal bank account records, from which she filed an itemized accounting of her income and expenses, and from the books of the Agency prepared by the plaintiff. Her figures are, however, her own and were not certified or verified by a licensed accountant and could well, therefore, contain accounting irregularities. The records are, however, detailed and present at least a general picture of her affairs.

In her complaint plaintiff lists loans totaling some $107,000.00, the loss of which she contends the debtor failed to explain. These debts begin in 1979. Testimony on each loan is summarized as follows:

Debtor executed a $1,200.00 note in April of 1983 to the plaintiff to recognize various purchases for or cash advances made to debtor prior thereto. All but $313.00 of this amount was for consumable goods. The balance was for various small cash advances as needed by the debtor.

Plaintiff contended that of loan proceeds of a Maretta Wheeler loan of $20,020.00 dated December 21, 1979, at Greene County Bank, only $16,300.00 was paid into the Agency. It was clearly shown, however, from the face of the original note and the records of the Agency that $5,000.00 was drawn on the loan on December 21 and paid into the Agency on the same day, that $5,000.00 was drawn and paid into the Agency on December 28, and that the final $10,000.00 was drawn and paid into the Agency on January 4, 1980.

A note was made to Maretta Wheeler on October 31, 1980, at the Greene County Bank in the amount of $10,025.00. Plaintiff and defendant agreed that all or virtually all of these proceeds were paid into the account of W & S as "capitalization" by the debtor.

A loan of $7,500.00 was made by Greene County Bank to the debtor on March 7, 1980. Debtor showed that from these proceeds $3,450.00 was paid to the Greene County Bank and $1,200.00 was put into the Agency. Debtor was unable to account for the balance of the loan proceeds by documentation but testified that the balance was used to pay direct interest at the bank or that it could have been used for personal living expenses or business expenses. No evidence was introduced to show otherwise.

A loan of $19,175.00 was made on October 29, 1980, at the Greene County Bank. Debtor and plaintiff agree that the only draw allowed of $15,000.00 was paid on various interest obligations and debts of W & S and the Agency.

A loan of $4,020.00 was made at Greene County Bank on October 26, 1979. This loan predates the formation of the Agency but not of W & S. Debtor testified her ex-husband had their personal records for 1979, and they were unavailable to her. Though she could not document it, her recollection was that the proceeds were used to pay various obligations of W & S and of her and her ex-husband. No evidence was introduced to show otherwise.

A loan of $5,000.00 was made at Greene County Bank to the debtor on November 29, 1979. Absent the unavailable records, debtor recalled that these proceeds were used to pay various obligations of the Wheelers and of W & S. It is noteworthy that an account of the plaintiff secured this loan of another, but plaintiff insisted she had no idea why this loan was made or of where the funds went. She did not, however, adduce evidence to contradict the explanation of the debtor.

The debtor entered into a series of loan transactions with First Tennessee Bank in January through May of 1981 which totaled $17,000.00. Debtor testified that all of these funds went into her personal accounts, into the Agency, or for other legitimate personal or business expenses. She was able to document that, of the $17,-000.00, $14,000.00 went mostly into her personal accounts and partly into her Agency account. Only $3,000.00 was not docu-

mented but plaintiff adduced no evidence to counter the explanation of the debtor.

The debtor borrowed $13,100.00 from First Tennessee Bank on February 4, 1980. Debtor documented that $4,000.00 was paid into her Agency account on the same day and that $3,000.00 and $4,198.00 was deposited into Greene County Bank account on the same day and the day after. She believed this to have been into the W & S Account since the deposits were reflected in neither her personal nor Agency accounts. The other $1,902.00 was not documented, but the plaintiff offered no evidence in contradiction to debtor's explanation of direct interest payments or payments on legitimate business or personal obligations.

Finally, it was shown that debtor borrowed $16,100.00 from her aunt on December 16, 1981. Plaintiff conceded that $13,000.00 of this sum was paid into the Agency, and debtor produced a $3,000.00 deposit slip dated December 17, 1981, showing the balance of the funds was deposited into her personal account.

Plaintiff conceded she knew of no misappropriation, no fraudulent or unlawful transfers, and no secreting by the debtor of any of these or other funds. As one intimate with the debtor's personal and business affairs, plaintiff conceded that she knew of no money or asset of the debtor which she failed to disclose to the court within her bankruptcy schedules.

The debtor also introduced evidence of a portion of her business and personal loans and the amounts of interest which were paid on them from 1979 through 1983. The debtor's lengthy summary explains and lists these amounts, and her explanation appears reasonable and was not rebutted.

Debtor has, therefore, accounted for by documentation:

(a) All but $313.00 of the $1,200.00 note

(b) All of the $20,020.00 note

(c) All of the $10,025.00 note

(d) All but $2,850.00 of the $7,500.00 note

(e) All of the $19,175.00 note upon which $15,000.00 was drawn

(f) None of the 1979 $4,020.00 note for which records were unavailable

(g) None of the 1979 note of $5,000.00 for which records were unavailable

(h) All but $3,000.00 of the $17,000.00 note

(i) All but $1,902.00 of the $13,100.00 loan

(j) All of the $13,000.00 loan

Thus, debtor has documented the disbursement of some $88,780.00 of the loans totaling $105,865.00 identified and complained of. Of the undocumented total of $17,085.00, $9,020.00 is not documented due to the unavailability of records. The debtor's explanation that some of the loan proceeds were paid directly on bank obligations without disbursing them through her accounts or perhaps being paid into W & S accounts or consumed in her ordinary living expenses appears reasonable. This is especially true given the magnitude of her interest obligations and the large amounts by which her personal and business expenses exceeded income.

## II

■. One of the primary goals of the Bankruptcy Act is to relieve the honest debtor from the weight of oppressive indebtedness and permit him to start afresh, free from the obligations and responsibilities consequent upon business misfortunes. *Williams v. United States Fidelity & Guaranty Company*, 236 U.S. 549, 35 S.Ct. 289, 59 L.Ed. 713 (1915). This was true under the former Act and is equally true under the Bankruptcy Reform Act of 1978, 11 U.S.C.A. § 101 et seq.

Section 727(a)(5) provides that a debtor will be denied a discharge when "the debtor has failed to explain satisfactorily ... any loss of assets or deficiency of assets to meet the debtor's liabilities." This provision was contained in the former Bankruptcy Act as § 14(c)(7), and the law has remained essentially unchanged.

In the instant case the plaintiff initially complained of a failure to explain the loss of $107,000.00 in loan proceeds over a four year period. During plaintiff's proof she conceded the proper disbursement of $55,212.00 of the proceeds, leaving the debtor to explain the balance.

■ A satisfactory explanation requires the debtor to demonstrate good faith in the conduct of her affairs and in explaining the loss of assets. 4 *Collier on Bankruptcy,* ¶ 727.08 (15th ed. 1983), *In re Shapiro & Ornish,* 37 F.2d 403 (N.D.Tex.1929), aff'd, *Shapiro & Ornish v. Holliday,* 37 F.2d 407 (5th Cir.1930), the court said:

> The word "satisfactorily," ... may mean reasonable, or it may mean that the court, after having heard the excuse, the explanation, has that mental attitude which finds contentment in saying that he believes the explanation—he believes what the [debtors] say with reference to the disappearance or the shortage ....
> He no longer wonders. He is contented.

The standard by which the explanation is measured may then be said to be one of reasonableness or credibility.

In *In re LaBonte,* 13 B.R. 887 (Bkrtcy.D. Kan.1981), the debtor was not able to explain discrepancies in the final months of his business but kept sufficient books and records from which his financial condition could be ascertained. The plaintiff could only allege the disappearance of assets but could prove no concealment or unlawful transfer of assets. The debtor was found to have made a good faith effort to explain his financial conduct and his discharge was therefore granted.

In *International Shoe Co. v. Lewine,* 68 F.2d 517 (5th Cir.1934), the loss of $19,315.00 was not explained to the satisfaction of the plaintiff, but the court found no evidence of concealment or the failure to surrender assets. No false entries were found on the books. The debtor testified there had been no diversion or misapplication of funds, and the plaintiff failed to show any hidden or concealed assets or unlawful conduct. The debtor's discharge was therefore granted. See also *In re Simon,* 216 F.2d 339 (7th Cir.1954).

*In re Gibson,* 409 F.Supp. 399 (S.D.Miss. 1971), a debtor was discharged, although he could not explain an inventory discrepancy of more than $34,000.00, because he had kept books and records from which his financial condition could be ascertained and had relied upon his accountant who prepared those books.

In contrast, in *Johnson v. Bockman,* 282 F.2d 544 (10th Cir.1960), the debtor's discharge was denied because he made no effort to explain a loss of assets. In *Baum v. Earl Millikin, Inc.,* 359 F.2d 811 (7th Cir.1966), the debtor's explanation was not supported by any tangible evidence and the discharge was denied. See also *In re Solari Furs,* 263 F.Supp. 658 (E.D.Mo.1967), where a discharge was denied for failure to produce records to substantiate a discrepancy in the value of inventory.

■ In the instant case the facts are akin to those cited cases where the discharge was allowed. For the period where records were available to her, the debtor documented $91,000.00 of $107,000.00 in loan proceeds.[2] She explained that the balance was consumed by occasional direct transfers by the banks to pay interest due on other obligations. Her explanation is plausible given the substantial loan obligations and the number of transactions involved. Furthermore, she testified these sums could have been consumed to defray her personal ordinary living expenses.

It is noteworthy that the plaintiff was the bookkeeper of both businesses and close friend and confidant of the debtor at all relevant times and could cite no instance of misapplication or concealment of assets. Indeed she offered no proof to contradict debtor's explanations and debtor's assertion that she had made no unlawful transfers, had concealed no assets, and had duti-

---

2. Loan proceeds from two loans totaling $9,020.00 made in 1979 for which she does not retain bank records were explained to have been used to pay obligations of herself, her then husband, or W & S Company.

fully reported all of her assets upon her bankruptcy schedules.

The debtor's explanation concerning the use of the undocumented loan proceeds is reasonable, credible, and unimpeached and is, therefore, satisfactory. Her testimony is supported by the documentary evidence available to her, and there is no reason to assume dishonesty in the undocumented areas.

The discharge will be granted.

This Memorandum constitutes findings of fact and conclusions of law, Bankruptcy Rule 7052.