**In the Matter of Allen Kent DeGASE, and Donna Karyl DeGase, Debtors.**

**L.G. DeGASE, Plaintiff,**

**v.**

**Allen Kent DeGASE, and Donna Karyl DeGase, Defendants.**

Bankruptcy No. 85–02340–SJ.
Adv. No. 85–0605–SJ.

United States Bankruptcy Court,
W.D. Missouri,
St. Joseph Division.

Aug. 25, 1986.

As Amended Sept. 22, 1986.

Joseph K. Houts, Wilcox, Houts, Douglass & Stevenson, St. Joseph, Mo., for plaintiff.

Hugh A. Miner, St. Joseph, Mo., for defendants.

## FINDINGS OF FACT, CONCLUSIONS OF LAW, AND FINAL DECREE DENYING THE DISCHARGE IN BANKRUPTCY OF THE DEFENDANT ALLEN KENT DeGASE

DENNIS J. STEWART, Chief Judge.

The plaintiff L.G. DeGase seeks the denial of the discharges in bankruptcy of his brother and sister-in-law, Allen Kent DeGase and Donna Karyl DeGase. It is the contention of the plaintiff that the defendants have "transferred, removed and concealed property of the plaintiff" (§ 727(a)(2) of the Bankruptcy Code); and that they "have failed to explain satisfactorily loss of assets or deficiency of assets to meet the debtors' liabilities." (§ 727(a)(5) of the Bankruptcy Code).

The issues made by the pleadings came on before the bankruptcy court for hearing in St. Joseph, Missouri, on December 16, 1985, whereupon the parties appeared both personally and by their respective counsel.

The evidence which was then adduced established the following relevant facts: The plaintiff and the defendant were formerly partners in a business enterprise known as "Redman Builders Supply." On March 10, 1982, plaintiff filed a petition for dissolution and liquidation of the partnership in the Circuit Court of Nodaway County. That court entered its decree on June 24, 1982, dissolving the partnership and directing that Allen Kent DeGase render an accounting for the partnership assets. From the state court records which have been the subject of the evidence adduced in this court, it appears that Allen DeGase never complied with the order to make an accounting.

Initially, the state court directed an accounting firm to examine the books and records of Allen Kent DeGase. But the accounting firm's efforts were frustrated by the failure and refusal of Allen Kent DeGase to turn any records over to the accounting firm which were intelligible. After repeated requests, a mixture of records was turned over to the accounting firm, from which virtually nothing could be ascertained respecting the debtor's financial history and transactions. This resulted in the state court's adjudging the debtor in civil contempt of court. And the accounting firm reported, in a state court hearing held October 21, 1983, that substantially all the partnership assets had been depleted. In the course of the hearing, the plaintiff L.G. DeGase testified, as he did in the hearing of the merits of this action; that, at the commencement of the partnership business, more than $100,000 in value existed; that the defendant, without authorization of L.G. DeGase, moved the security to another location and commenced another business; and that he had not accounted to the plaintiff L.G. DeGase for any of the partnership property taken. On the basis of this uncontradicted evidence, the state court entered judgment against Allen Kent DeGase and for L.G. DeGase in the sum of $30,000 plus half of the cost of the accounting.

In the proceedings which were subsequently brought by the plaintiff L.G. DeGase to enforce the judgment, documentary evidence was adduced in the form of a financial statement dated February 8, 1983, and submitted by the defendant to Citizens State Bank of Maryville in which he claimed a net worth of $69,513.94, including $40,000 in "raw materials"; $10,000 of value of "machinery and equipment"; and $32,607.81 in accounts receivables. On April 10, 1984, the state court issued its order to the effect that:

"having heard the testimony of Joe Zahnd, Vice President of Citizens State Bank, and reviewed the bank records produced by him relating to banking transactions of Allen DeGase in behalf of Redman Supply, A.D. Lumber, A.D. Lumber Co. and A.D. Lumber Co., Inc., and having heard the testimony of Allen DeGase, judgment debtor, and reviewed the records produced by him of A.D. Lumber Co., Inc., [the court] finds that the property of A.D. Lumber Co., Inc., is subject to execution and sale in Nodaway County, Missouri, because Allen DeGase has commingled his property with the assets of A.D. Lumber Co., Inc., in an effort to defraud, hinder and delay payment to his creditor, L.G. DeGase, for the judgment rendered heretofore in favor of L.G. DeGase in this action.

"NOW THEREFORE, IT IS ORDERED, ADJUDGED, AND DECREED, that the plaintiff have execution and sale of the assets of A.D. Lumber Co., Inc., to the extent of $30,000, plus interest and cost, including the accounting cost taxed against said Allen DeGase."

On April 30, 1984, the Missouri Court of Appeals affirmed the judgment of the state trial court. See *DeGase v. DeGase*, 690 S.W.2d 485, 486, 487 (Mo.App.1985), in which the following pertinent considerations were stated:

"In 1977, the brothers orally agreed to start a lumber supply business as a partnership under the name of Redman Builders' Supply. The terms of the agreement were as follows: initial partner capital contribution of $2,500, defendant to run the business, and draw an

annual salary, plaintiff was not to be involved in the management of the business, all profits of the business were to remain in the business and to be used to build up the inventory. Plaintiff owned an established construction business, and, based on his credit standing, a local bank extended the partnership a line of credit.

"The partnership commenced business in accordance with the agreement. Both parties made the required capital contribution; defendant apparently contributed $3,000, and he was paid an annual salary. The plaintiff made the only withdrawal of surplus from the partnership when he did not pay for $8,000 worth of inventory which he withdrew from the business.

"In 1979, defendant expanded the business adding a 'steel division.' He claimed that this was a business entirely separate from the Redman partnership and that he formed it with another brother, Roger DeGase. The 'steel division' supplied materials commonly sold by lumber yards, used the same checkbook, invoices, and sales slips as Redman Supply. The division was included on the 1979 partnership tax return but was not included in the following years' returns.

"Roger DeGase testified that he and the defendant had some type of arrangement, but he neither contributed any money to the enterprise nor participated in any way in its management. Plaintiff testified that he did not want to have anything to do with Roger.

"Problems arose between the partners, and plaintiff alleged that the defendant refused to supply him with any information about the business for over three years. In February of 1982, plaintiff filed a petition for an accounting and liquidation. The plaintiff alleged that the business was a partnership and that the 'steel division' was a part of the partnership. After a hearing, the court decreed that the steel division was a part of the partnership, that the partnership be dissolved, and that a full accounting be made. Defendant was further ordered to turn over the records of the

business to the accountants appointed to conduct the accounting.

"Defendant did not produce the records, and the court entered a second order directing the defendant to do so. The court also appointed a receiver to take charge of the assets, sell them, and distribute the proceeds. The receiver found only four or six thousand dollars worth of inventory in the business. The defendant valued the business equipment at $8,000.

"Defendant once again failed to turn over a complete set of records, and those he did produce were unorganized and thrown together in one box. Defendant also interfered with the sale of the assets of the company, causing its cancellation.

"Plaintiff next filed a petition requesting that the defendant be held in contempt for his interference with the sale and his continuing refusal to produce all the company's records. After another hearing, the court found the defendant in contempt but deferred his jail sentence for ten days so that defendant could produce the long sought records. Defendant produced two large boxes into which he had dumped invoices, bills, sales tickets, and cancelled checks. He also provided the company's tax returns. The records were still not complete, but the accounting firm conducted an accounting based on what had been provided. The accounting was done by trying to prove the partnership's tax returns through bank transactions, taking bank deposits and attempting to reconcile them with all the monies shown coming into the business. The same method was used in calculating disbursements. The steel division was treated as being a part of the partnership.

"After the accounting was completed, plaintiff filed a motion for a judgment on the accounting, and defendant filed a motion for judgment for the unpaid materials plaintiff had withdrawn from the business. At the hearing on the motion, the principal witness was the accountant, Truman Hardy. He testified that the

partnership's income had been understated and its purchases overstated on its tax returns. He also found that profits from the steel division were not included in the returns after 1979. Mr. Hardy concluded that each partners' capital account should show a surplus of twenty-five thousand dollars. Defendant claimed that he was entitled to a larger contribution return because of loans made by the steel division, but Mr. Hardy treated these as merely intra-partnership fund transfers.

"Plaintiff also presented the testimony of several witnesses who stated that they had seen the defendant moving large amounts of the inventory from the premises of the business after the plaintiff filed his case. That property was returned after the receiver's inventory of the company. At some time before plaintiff filed the petition for dissolution, the inventory filled two large buildings. Plaintiff, based on a visual examination, estimated the inventory's value at $100,000. Another witness knowledgeable in the construction business valued the inventory at $75,000 based upon his visual examination. Defendant himself valued the equipment at eight thousand dollars. Plaintiff conceded that he had not paid for $8,000 dollars in material he had taken from the company.

"The court entered judgment in favor of the plaintiff for thirty thousand dollars, splitting the accounting cost between the parties, and denied the defendant's counterclaim. Defendant's after-trial motions were also denied.

"Defendant raises two points on appeal: first, that the court's decision that the steel division was a part of the partnership was not supported by sufficient evidence; and, second, that the judgment was also not supported by sufficient evidence.

"Defendant's points concern the sufficiency of the evidence, or lack thereof, supporting the trial court's decree and judgment. First, defendant contends that no substantial evidence supports the court's determination that the steel divi-

sion was part of the partnership and that its holding was against the weight of the evidence. We disagree.

"The evidence supporting the judgment was that the same equipment, sales slips, and invoices were used in both operations. The 'steel division' was run from the same premises as the partners' lumber supply business, and the 'steel division' supplied materials usually supplied by a lumber yard. The steel division was included in the 1979 partnership tax return but was omitted from the following years' returns.

"The only evidence that conceivably supports defendant's theory was the testimony of Roger DeGase. He testified that he had some arrangement with the defendant of unspecified nature, but he invested neither money nor energy in the enterprise. Certainly, this testimony does not support the conclusion that the court's findings are against the weight of the evidence. *Trenton Trust Co. v. Western Surety Co.*, 599 S.W.2d [481] *supra*, at 483 [ (Mo.1980).]

"Defendant's second point is that no substantial evidence was adduced to support the court's judgment for $30,000 in favor of the plaintiff. Once again we find no merit in the defendant's argument. The accountant concluded that the parties' capital accounts should have in them $25,000 to $30,000 based on his calculation of the profits made by the business. The defendant did nothing to assist the accountant; if anything, he obstructed the audit. Any error in the accountant's determination must be charged to the defendant because of his obstructionist behavior. Moreover, defendant produced no evidence contradicting the accountant's calculations.

"Taking into consideration all of the evidence, we conclude that substantial evidence existed to sustain the court's determination that a net thirty thousand dollar surplus remained due to plaintiff. § 358.180(7).

"For the foregoing reasons, we affirm the judgment of the trial court."

In the trial of the issues in this court, the material portions of the evidence which had been previously presented to the state court were in substance replicated.[1] Again, it was the testimony of the plaintiff L.G. DeGase that over $100,000 in inventory remained unaccounted for. It was further shown to the court that, by reason of the intervention of these bankruptcy proceedings, the execution sale ordered by the state court was never held. The defendant denied that he had removed or commingled or failed to account for any appreciable assets of the plaintiff L.G. DeGase.

## CONCLUSIONS OF LAW

■ Under the governing provisions of § 727(a)(5) of the Bankruptcy Code, it is a ground for denial of discharge for a debtor to fail satisfactorily to explain the loss or diminution of assets which otherwise might be available to satisfy the indebtedness sought to be discharged in bankruptcy.[2] Under this statute the authorities have with some uniformity held that, if a debtor, at a time reasonably proximate to the date of bankruptcy, admits to having a certain value of property, then fails satisfactorily to account for the diminution of that value, denial of discharge is warranted. This rule was long ago established in this district in the case of *Matter of Foglesong*, In Bankruptcy Nos. 76–B–222–SJ and 76–B–223–SJ (Bkrtcy.W.D.Mo. July 6, 1977), affirmed, Civil Action No. 77–6068–CV–SJ (W.D.Mo. April 27, 1978). In that case, the following were the crucial findings of fact and conclusions of law made by the court:

"[T]he defendant John Micheal Foglesong admitted to Robert Culler, Jr., on July 31, 1976, that he had, in inventory in the bankrupts' Trenton, Missouri, store, some $22,000 worth of clothing, whereas, as of the date of the institution of these proceedings on September 9, 1976, there was no inventory and only $2,000 cash on hand.

"Otherwise, the testimony adduced on April 22, 1977, as material, reflected only the bankrupts' wholly generalized explanation of the loss to the effect that, during the 'last week' of their liquidation sale in Trenton, they were forced to sell inventory at less than cost. John Michael Foglesong also testified that he had records to show where 'every penny' went.

"Those records, however, were not adduced in the course of the trial April 22, 1977, nor was any summary of them adduced, as might have been done under the provisions of Rule 1006 of the Federal Rules of Evidence.

"Contrary to the defendants' assertion that plaintiff has not met its burden of proof under Rule 407 of the Rules of Bankruptcy Procedure (which simply provides that '[a]t the trial on a complaint objecting to a discharge, the plaintiff has the burden of proving the facts essential to the objection'), the plaintiff has, by the testimony of Culler, shown that (1) there was approximately $22,000 in inventory in the defendants' Trenton store as of July 31, 1976, and that (2) as of September 9, 1976, the date of the filing of the petitions herein for voluntary bankruptcy, none of the inventory was left and the defendants claim to have only $2,100 in 'cash on hand.' This disappearance of assets reasonably gives rise to a duty of the bankrupts to explain that disappearance, as required by Section 32(c)(7), Title 11, United States Code, (providing that '[t]he court shall grant the discharge unless satisfied that the bankrupt has ... failed to explain satisfactorily any losses of assets or deficiency of assets to meet his liabilities'). 'Once the plaintiff meets the initial burden of producing evidence

---

**1.** Basically, as observed above, plaintiff's testimony that $100,000 in inventory was taken and not accounted for was, in this action, uncontradicted.

**2.** The relevant subsection provides as follows: "The court shall grant the debtor a discharge,

unless ... the debtor has failed to explain satisfactorily, before determination of denial of discharge under this paragraph, any loss of assets or deficiency of assets to meet the debtor's liabilities."

to prove the facts to establish the objection, the burden of going forward with the evidence that will "explain satisfactorily" the losses or deficiencies shifts to the bankrupt.' 1A Collier on Bankruptcy para. 14.59, p. 1436.

"The question, then, as noted above, is whether the defendants have, by virtue of the information which they have presented at trial, in their response to the subsequent show cause order, and in their traverse of the plaintiff's response, satisfactorily explained an appreciable loss of assets. 'Just what constitutes a satisfactory explanation has not been expressly defined, but it probably means that the bankrupt must explain his losses or deficiencies in such manner as to convince the court of good faith and businesslike conduct.' 1A Collier on Bankruptcy para. 14.59, p. 1436. In brief summary, the explanation which has been produced by the defendants simply shows, by bank records, only that some $14,397.08 has been deposited in the defendants' bank accounts during the time period in question. This leaves approximately the loss of $7,602.92 in inventory unexplained, except for the general explanation that some items were sold at less than cost during the last weeks of the liquidation sale. But no attempt is made to show *how much* of the inventory was sold at less than cost. In fact, the evidence which has been produced does not even provide the court with a means whereby it may be *estimated* how much of the inventory was sold at less than cost. 'An explanation which is based mostly upon an estimate of the bankrupt, founded upon nothing by way of verification or affirmation by means of books, records or otherwise has been held unsatisfactory. Even though the underlying facts referred to by a bankrupt may suggest a plausible explanation, the testimony may be so general as to be insufficient. More is required of the bankrupt in the way of explanation than mere generalities.' 1A Collier on Bankruptcy para. 14.59, pp. 1437–1438. A satisfactory explanation of a loss of

assets to meet liabilities must consist of more than vague, indefinite and uncorroborated evidence relating to financial transactions. *Baum v. Earl Millikin, Inc.*, 359 F.2d 811 (7th Cir.1966). The purpose of this exception to the bankruptcy act is to provide insurance against the disappearance of substantial portions of the bankrupt's assets without explanation. Therefore, regardless of the intent of the bankrupts, if they are unable to explain satisfactorily the disappearance of a significant part of their assets, discharge must be denied. '[I]t appears that the ... element of intent ... is not required here.' 1A Collier on Bankruptcy para. 14.59, p. 1433. And the denial of discharge is necessary as a safeguard against possible secretion, concealing, or removal of assets. In the action at bar, the portion of assets not accounted for are considerable—in the vicinity of $8,000 of value—and it is therefore proper and fitting that the court should exercise its discretion by denying the discharge of the defendant in bankruptcy."

In affirming the judgment of this court, the district court made the observation that the defendants had been appropriately granted sufficient opportunities to explain the diminution of assets and had failed to do so satisfactorily. See also *Matter of Simone*, Adversary Action No. 83–0021–1 (Bkrtcy.W.D.Mo. November 14, 1983). In a similar vein, this court concluded in that action as follows:

"In regard to this exception, the cases and authorities uniformly hold that, when the plaintiff demonstrates any substantial diminution of assets, the burden shifts to the defendant debtor to produce evidence which satisfactorily explains the diminution. 'Under Rule 407 the plaintiff has the burden "of proving the facts essential to his objection." ... [T]he plaintiff will be required to go beyond a showing of "reasonable grounds" and adduce proof of the facts which will establish that the debtor has committed the act charged before the burden of going forward with the evidence will shift to

the debtor.' 4 Collier on Bankruptcy para. 727.03, p. 727–47. See Also *Matter of Reed*, 700 F.2d 986, 992 (5th Cir.1983). ('While the burden of persuasion rests at all times on the creditor objecting to discharge, it is axiomatic that the debtor cannot prevail if he fails to offer credible evidence after the creditor makes a prima facie case. The creditor's burden does not obviate the necessity that the debtor provide a satisfactory explanation of the loss of assets.'); *In re Nazarian*, 18 B.R. 143, 149 (Bkrtcy.D.Md.1982); ('Once the plaintiffs show that assets have disappeared, or cannot be traced, the burden of persuasion shifts to the debtor to explain his financial transactions.'); *Matter of Ramos*, 8 B.R. 490, 494 (Bkrtcy.W.D.Wis.1981) ('The plaintiff ... must prove facts which will establish that the debtor has committed the act charged before the burden of going forward with the evidence will shift to the debtor.'). In determining whether the debtor has gone forward with a satisfactory explanation of the loss of assets, it is said that a general and conclusionary explanation is insufficient. 'An explanation which is based mostly upon an estimate of the bankrupt, founded upon nothing by way of verification or affirmation by means of books, records or, otherwise has been held unsatisfactory.' 1A Collier on Bankruptcy para. 14.60, p. 1437 (1978). Further, the intention of the debtor is an immaterial issue with respect to this objection to discharge. '[I]t appears that the ... element of intent ... is not required here.' 1A Collier on Bankruptcy para. 14.59, p. 1433. *Matter of Foglesong*, In Bankruptcy Nos. 76–B–222–SJ and 76–B–223–SJ (Bkrtcy.W.D.Mo. July 6, 1977), affirmed, Civil Action No. 77–6068–CV–SJ

(W.D.Mo. April 27, 1978). In this action, without some particularity, the explanation tendered by the debtor is simply insufficient and not credible. Denial of discharge is therefore warranted on this lone ground."

These decisions are generally declarative of the accepted law on this issue [3] and they are squarely applicable to the action at bar. By his own admission in the financial statement of February 8, 1983, debtor had more than $50,000 of inventory in his possession and the loss or diminution of that value of property has not been satisfactorily explained. The debtor has offered what can be classified as, at most, a general explanation to the effect that any assets were used up in living expenses prior to the date of bankruptcy.[4] But, as observed above, general explanations which are not supported by intelligibly-presented documents are not sufficient.[5] Nor is it necessary that the proponent of an objection to discharge on this ground demonstrate any fraudulent intent on the part of the debtor.[6]

■ The facts of the case, furthermore, warrant the court in exercising its discretion to deny the discharge in bankruptcy. The debtor should not be permitted to use the bankruptcy court to evade the duty which he owed the plaintiff under the state judgment to restore plaintiff's interest in the partnership to him. In recent opinions, this court has pointed out that the purpose of the bankruptcy laws should not admit of such use of the bankruptcy process. See *Matter of Bruno*, In proceedings for straight liquidation under chapter 7 of the Bankruptcy Code, 68 B.R. 101, 103 (Bkrtcy. W.D.Mo.1986), as follows:

"As an initial consideration in support of this general aphorism, it seems appro-

---

3. The legal aphorisms contained in the above decisions are as uniformly applied as they are simple and straightforward.

4. Otherwise, the debtor's statements and implications are to the effect that nothing extraordinary or unbusinesslike had taken place. But there are no credible particularized statements or books and records which can fairly be interpreted to account for the missing inventory.

5. In this action, the documents which have been submitted do not in any way lend themselves to an interpretation which would account for the missing inventory.

6. See *Matter of Foglesong, supra,* in the text hereof.

priate to observe that the concept of bankruptcy and its premier importance to the economic and political life of our nation appears to this court to place the laws and rules which implement its key role above and beyond the use of those who would employ them to gain freedom from indebtednesses which were incurred as a result of their crimes. Bankruptcy has too grand and lofty a purpose for such misuse. The framers of our national constitution penned the bankruptcy powers into its articles as one of the most significant—if, indeed, not the most significant—of the protections of our way of life. The fundamental and paramount importance of bankruptcy laws can quickly be grasped if one simply contemplates a system in which each citizen is permitted only one economic life and in which any single economic failure would make one a debtor for life, or nearly so, regardless of the potential future benefits to himself and his society which his industry and innovative genius might otherwise have created. Such a legal system would frustrate and still the creative spirit which lies at the heart of our democratic society. On the other hand, however, if the bankruptcy process is permitted to be abused by those whose purposes are not in consonance with this ideal, the effect tends to be the same as if the bankruptcy laws were wholly suppressed. For the bad reputation of the bankruptcy system which thus develops discourages its use by those who would prefer to preserve some semblance of their good name.

"It is in consequence of these realities that the bankruptcy court has a paramount obligation to prevent such abuse as will bring the great goals of bankruptcy into disesteem and disrepute."

See also *Matter of Carroll*, 70 B.R. 143, (Bkrtcy.W.D.Mo.1986), to the following effect:

"It is plain and evident from an examination of these fundamental concepts that, in determining the issue of who is entitled to a discharge in bankruptcy, the bankruptcy courts must make one of the most important, critical and sensitive decisions known to American jurisprudence. Fine distinctions must be painstakingly and accurately—yet promptly—perceived. For it is clear that tempering justice with mercy in granting discharge under some circumstances will promote the ideals of giving struggling debtors new economic life; in others—not far removed factually, perhaps, from these situations—it can only stultify and defeat that ideal by leaving it open for those who would practice artifice and deception to abuse the bankruptcy system. And experience teaches that when the permutations of the law promote abuse, the bankruptcy system tends to become a haven for the abusers, for others who might otherwise, in their hour of need, avail themselves of the process refrain from doing so out of shame and fear for their reputation."

Similarly, in this case, the debtor owes the creditors in connection with those bankruptcy proceedings a satisfactory explanation for the diminution of assets and has failed to give that satisfactory explanation, although granted an ample and explicit opportunity to do so. The debtor Donna Karyl DeGase has a co-equal responsibility to make the explanation and her discharge must therefore be denied as well as that of Allen Kent DeGase. It is therefore

ORDERED, ADJUDGED AND DECREED that the defendants' discharges in bankruptcy be, and they are hereby, denied.