**In re Guido Barletta BLASINI, Debtor.**

**Sebastian Infanzon MITCHELL, Plaintiff-Appellee,**

v.

**Guido Barletta BLASINI, Defendant-Appellant.**

**Civ. No. 85–0396 (JAF).**

United States District Court, D. Puerto Rico.

Nov. 21, 1986.

Arturo González-Martín, Otero Suro & Otero Suro, San Juan, P.R., for plaintiff-appellee.

José M. Rocafort Bustelo, San Juan, P.R., for defendant-appellant.

## MEMORANDUM OPINION AND ORDER

FUSTE, District Judge.

This case is before us on appeal from a judgment by the United States Bankruptcy Court for the District of Puerto Rico denying appellant Guido Barletta Blasini a discharge from responsibility for his debts. The suit, filed by the Trustee for the debtor's estate, alleged five causes of action to support the denial.

At the heart of the matter, as brought before the bankruptcy court, lies a serious discrepancy between a financial statement[1] (the statement) given by Barletta to creditor Professional Underwriters only seven months prior to filing his bankruptcy petition, and the schedule of assets filed with the petition.

Additionally, and perhaps more crucial to our finding in this appeal, is the matter of the disposition of over $500,000 which the debtor received in commissions, loans, and other advances during the year prior to filing his petition.

The court below held a hearing on the discharge on January 23, 1984. Barletta submitted evidence which shows that apartment and cars listed on the statement but not on the schedule in fact belonged to other members of his family. The court found that, notwithstanding the documentation of ownership of these particular properties, Barletta had failed to "satisfactorily explain the whereabout and value of the household goods or the fact that the shares in question were listed with no value." The court also found that he failed to satisfactorily explain how and when the $500,000 advance was disbursed. The court, therefore, denied the discharge and this appeal followed.

Section 727(a) of the Bankruptcy Code, 11 U.S.C. sec. 727(a), sets forth those situations in which the court will deny the debtor a discharge. The list of exceptions to discharge include the failure to explain satisfactorily any loss of assets or deficiency of assets to meet the debtor's liabilities. *See* 11 U.S.C. sec. 727(a)(5).

It is appellant's position that the statement should not have been given consideration because, among other reasons, the decision to loan the money was made before the date of the unsigned statement, and the statement was never introduced into evi-

---

1. The financial statement given in support of a request for loans totaling more than $500,000 included as part of the debtor's property: a condominium valued at $45,000; five depreciated automobiles valued at $20,000; household property valued at $20,000, and stocks in insurance companies valued at $255,000. The sched-ule submitted to the court with the petition did not reflect that he had owned the apartment during the past year, nor had the vehicles and household goods valued at the amounts stated seven months earlier. Although he does list ownership of the shares, he lists their current value at "O".

dence. *Arguendo* that the document which constitutes the statement not be considered, our review of the record reveals more than enough support for the findings of fact made by the bankruptcy court.

Barletta admitted that, except for the controversy over ownership of various properties, the financial statement given to Professional Underwriters was accurate. That is, Barletta was the owner of stocks in insurance companies which, seven months before filing, he would value at over a quarter million dollars. At the hearing, the court brought to light the following facts: Gala Insurance Company, the sole stockholders of which were appellant and his brother, received over one million dollars in 1981, in addition to the commissions which were passed on to him. Appellant's only explanation of the disappearance of this money was as follows:

> Now, you have to realize one thing, sir. I'm a salesman, not an administrator. I've never been in the administrative part of Gala; and probably that was my fault. I dedicate myself to sales only. That's what I've always done. And that happens to a lot of companies. Sell a lot and you can go down the drain on account of the administrative part.
>
> . . . .
>
> Sir, expenses of Gala were very high; ... I had one office in Citibank which cost almost $300,000 a year in expenses. . . . Plus the regular personnel that I had in my office in the Mercantil Plaza, which cost another $300,000. Plus my personal expenses. The trouble with Gala was the administrative part of it.

This is the explanation given to the court as to why the stock lost all value in the interval between Professional Underwriters' advance of a half million dollars and Barletta's filing for protection under the Bankruptcy Code.

11 U.S.C. sec. 727(c)(1) gives the *trustee,* as well as the creditor, the right to object to discharge under subsection (a) if he doubts the compliance by the debtor. The bankruptcy judge, in turn, has reasonably broad discretion to accept or reject an explanation designed to satisfy a trustee's objection made under section 727 of the Code. *Baum v. Earl Millikin, Inc.,* 359 F.2d 811, 814 (7th Cir.1966).

A satisfactory explanation of a loss of assets to meet liabilities within the meaning of section 727 must consist of more than vague, indefinite, and unsupported testimony. *Id.* While the case at bar is not based upon corporate malfeasance, and piercing the corporate veil on an alter-ego theory is not before us, the bankruptcy court acted within its power in assessing appellant's credibility as to his participation in the fiscal administration of a corporation in which he was a controlling shareholder. The court below apparently decided that credibility was lacking, a finding which cannot be deemed clearly erroneous.

AFFIRMED.

IT IS SO ORDERED.