**In re Patricia GALLINI, Debtor.**

**Jerome BELOFF, Plaintiff,**

v.

**Patricia GALLINI, Defendant.**

**Bankruptcy No. 5–88–00144.
Adv. No. 5–88–0058.**

United States Bankruptcy Court,
M.D. Pennsylvania.

Feb. 27, 1989.

Joseph A. Corpora, III, Easton, Pa., for plaintiff.

Stephen G. Bresset, Honesdale, Pa., for debtor/defendant.

## OPINION AND ORDER

THOMAS C. GIBBONS, Bankruptcy Judge:

This proceeding is before the Court on Complaint of the plaintiff, Jerome Beloff (hereinafter "Plaintiff") objecting to the discharge of Patricia Gallini (hereinafter "Debtor") pursuant to both 11 U.S.C. § 727 and § 523. For the reasons provided herein, the debtor's discharge is hereby denied.

The two count complaint initiating this proceeding raises allegations under both 11 U.S.C. § 727 and § 523(a)(2) and (4). At the time of trial, the plaintiff made a request that the Court proceed to hear evidence only on the § 727 count and, if necessary, conduct a hearing in the future on the § 523 count. Defendant argued that both matters should be heard because the testimony elicited would prove that there was no debt due and owing from the debtor to the plaintiff. After hearing oral argument, the Court determined to hear evidence on the allegations of the § 727 count. Based upon the evidence adduced at trial, we find that plaintiff has met its burden under § 727 resulting in a general denial of debtor's discharge.

The facts are as follows. The debtor was the owner of real property known as "The Maple Lawn Inn" until on or about July 17, 1987 when the property was sold and the debtor collected the net proceeds from the sale approximating $258,716.43. Shortly thereafter, the debtor embarked on a cross country trip with a friend ending in Las Vegas, Nevada, where, according to the debtor, she gambled at various casinos and suffered losses approximating $245,000 within a two week period. Debtor returned home from her gambling trip with approximately $5,000. Debtor has no receipts and can present no evidence, either written or oral, to substantiate her claim of gambling losses. Prior to the debtor's trip to Las Vegas, she had no real gambling experience.

The plaintiff's primary interest in this matter is a claim that pursuant to a certain property settlement agreement entered into between the parties, the plaintiff was to receive approximately half of the proceeds of the sale of debtor's real property. Consequently, he objects to the debtor's discharge because of her failure to properly explain the loss of the proceeds of the sale. Debtor responds that she has adequately explained the dissipation of the assets by her acknowledgment of the receipt of the funds from the proceeds of the sale of the property and her subsequent trip to Las Vegas resulting in gambling losses approximating $245,000.

## DISCUSSION

Section 727(a)(5) reads in pertinent part as follows:

§ 727. **Discharge.**

(a) The court shall grant the debtor a discharge, unless—

(5) the debtor has failed to explain satisfactorily, before determination of denial of discharge under this paragraph, any loss of assets or deficiency of assets to meet the debtor's liabilities;

While the cases concerning a debtor's failure to satisfactorily explain the loss of assets under § 727(a)(5) are legion, this court has found no better discussion nor more comprehensive compilation of cases dealing with this section than that presented in *In re Drenckhahn*, 77 B.R. 697 (Bankr.D.Minn.1987), where the court at p. 709 writes as follows:

"On its face, the statute allows a debtor to make satisfactory explanation of loss or deficiency of assets at any time 'before determination of denial of discharge under [the] paragraph.' Thus, a debtor may come forward with an explanation of loss or deficiency of assets during the

trial of an objection to discharge under § 727(a)(5), and present that explanation to the court for its determination as to whether or not it is satisfactory. It is clear, however, that this section is directed toward insuring debtors' **accountability** for past transactions, and does not require or even allow inquiry into the substantive character of the loss or deficiency of assets itself. *In re Nye,* 64 B.R. 759, 762 (Bankr.E.D.N.C.1986). Section 727(a)(5) does not require that the explanation itself be meritorious, or that the loss or other disposition of assets be proper; it only requires that the explanation satisfactorily describe or account for the disposition. *Id.* The court's inquiry is limited to whether the debtor has made or now makes an explanation for the loss or deficiency of assets at issue, and whether that explanation is satisfactory. These are questions of fact. *In re Chalik,* 748 F.2d 616, 619 (11th Cir.1984); *In re Stuerke,* 61 B.R. 623, 626 (Bankr. 9th Cir.1986). To be satisfactory, the explanation must convince the bankruptcy judge. *In re Chalik,* 748 F.2d at 619; *In re Reed,* 700 F.2d 986, 993 (5th Cir.1983); *In re Yokley,* 61 B.R. 198, 200–01 (Bankr.W.D.Ky.1986). The standard is one of reasonableness and credibility. *In re Hendren,* 51 B.R. 781, 788 (Bankr.E.D.Tenn.1985); *In re Cohen,* 47 B.R. 871, 874 (Bankr.S.D.Fla. 1985). The debtor must explain his losses in such a manner as to evidence his good faith in the conduct of his financial affairs and in his efforts to make the explanation. *In re Shapiro,* 59 B.R. 844, 848; *In re Hendren,* 51 B.R. at 788 (Bankr.E.D.N.Y.1986); *In re Cohen,* 47 B.R. at 874; *In re Wheeler,* 38 B.R. 842, 846 (Bankr.E.D.Tenn.1984). The question of satisfactoriness again turns on the nature of the debtor's business, financial affairs and lifestyle, *In re Glaser,* 49 B.R. 1015, 1020 (S.D.N.Y.1985), and the Court is afforded broad discretion to make the determination in light of all the circumstances before it. *In re Martin,* 698 F.2d 883, 886 (7th Cir.1983); *In re Blasini,* 67 B.R. 373, 375 (D.P.R. 1986); *In re Cohen,* 47 B.R. at 875. In any event, the debtor must come forward with something more than generalized, vague, and uncorroborated statements in oral testimony. *In re Dolin,* 799 F.2d 251, 253 (6th Cir.1986); *In re Chalik,* 748 F.2d at 619; *In re Martin,* 698 F.2d at 886; *In re Stuerke,* 61 B.R. at 626; *In re Blasini,* 67 B.R. at 375; *In re DeGase,* 68 B.R. 504, 510 (Bankr.W.D.Mo.1986); *In re Simone,* 68 B.R. 475, 479 (Bankr. W.D.Mo.1983); *In re Yokley,* 61 B.R. at 200–01; *In re Schermer,* 59 B.R. 924, 925 (Bankr.W.D.Ky.1986) *In re Delancey,* 58 B.R. 762, 769 (Bankr.S.D.N.Y. 1986); *In re Switzer,* 55 B.R. 991, 998 (Bankr.S.D.N.Y.1986); *In re Hendren,* 51 B.R. at 783; *In re Ramos,* 8 B.R. 490, 496 (Bankr.W.D.Wis.1981). Many cases appear to require production of actual books, financial records, and documents to corroborate a debtor's in-court testimony. *See, e.g., In re Switzer.* The better (and more flexible) rule would not mandate denial of discharge for failure to produce corroborating papers where the debtor's testimonial explanation bears sufficient credibility. *In re Church,* 47 B.R. 186, 192 (Bankr.E.D. Tenn.1985). Thus, if a debtor's explanation is sufficiently specific and credible, the court may not deny discharge under § 727(a)(5) and the complaining creditor is relegated to other subsections of § 727(a) to support a denial of discharge premised upon the blameworthiness of the actual process of loss or deficiency of assets."

The court in *In re Mitchell,* 74 B.R. 457 (Bankr.D.N.H.1987) commented on the particular problems which face a debtor who has gambled away funds and has not kept an adequate record of those gambling activities as follows:

"The problem of 'undocumented' theft and gambling losses claimed by a bankrupt debtor is especially troublesome to creditors and to bankruptcy courts because of the ease with which any debtor can make such claims to explain away a substantial discrepancy in his assets at the time of the bankruptcy filing. This has led some bankruptcy courts in such cases, or analogous 'undocumented loss' cases to deny discharge on section

**494**

727(a)(5) grounds, on the basis that the debtor has failed to satisfactorily explain the loss of cash assets in the absence of documentation or with only a 'vague and generalized' explanation of the loss." *See, e.g. In re Delancey,* 58 B.R. 762, 769 (Bankr.S.D.N.Y.1986); *Matter of Ramos,* 8 B.R. 490 (Bankr.W.D.Wisc.1981); *Matter of Reed,* 700 F.2d 986, 993 (5th Cir. 1983); *In re Chalik,* 748 F.2d 616 (11th Cir.1984). See *Mitchell, supra,* at 461.

Finally, we direct the parties attention to the case of *In re Rowe,* 81 B.R. 653 (Bankr. M.D.Fla.1987). In this case the court was presented with a situation wherein the debtor took substantial cash proceeds of unsubstantiated sales and alleged that he gambled away the proceeds. The court, citing among other cases, *In re Chalik, supra,* comments that:

"... to be satisfying, an explanation must convince the Judge. (citations omitted). Vague and indefinite explanations of loses that are based upon estimates uncorroborated by documentation are unsatisfactory." 748 F.2d 616, 619 (11th Cir.1984).

The only explanation offered at trial by the debtor was that the cash and the proceeds of the unsubstantiated sales of his assets were gambled away. There was no documentation, corroboration or substantiation of the sales nor the disposition of the proceeds of the sales. The many cases and authorities uniformly hold that a Debtor's explanation that the diminution of his assets were a result of unsubstantiated gambling losses is an unsatisfactory explanation. *See In the Matter of Simone,* 68 B.R. 475, 477 (Bankr.W.D.Mo.1983); *Matter of Reed,* 700 F.2d 986, 992 (5th Cir.1983); *In re Yokley,* 61 B.R. 198 (Bankr.S.D.Ky. 1986)."

This court, as did the *Mitchell* court, *supra,* recognizes the inherent difficulty in cases wherein the debtors claim they have gambled away assets. We stress, at this point, that our determination is not based solely upon the fact that the debtor is unable to produce any documentary evidence supporting her claim of gambling loss. Rather, we have examined the evidence and after hearing the testimony have determined that the debtor's testimony is not credible and, therefore, we cannot find that the debtor did lose the monies as she alleges.

The debtor testified that with the proceeds of an approximately $258,000 sale of a business, she took to the road with the purpose of starting over again in Oregon. (N.T. 15, 30). The debtor later converted $245,000 into $100 and $20 bills and placed the money in a hiking bag under a bed in the motor home she shared with a friend on their cross-country trip. (N.T. 15). She also testified that her friend did not know the amount of money in the hiking bag. (N.T. 29, 34). The debtor and her friend logged some 13,000 miles of travel on their cross country excursion. (N.T. 31). Later, and apparently, without company of her friend, the debtor, instead of travelling to Oregon went to Las Vegas where she allegedly gambled away $245,000 within a two week period. (N.T. 34, 40, 41). When questioned by the court as to the extent of her gambling experience, she replied: "I really didn't like to gamble." (N.T. 78). When asked why she went to Las Vegas, she answered: "I don't know. I just wanted to go." (N.T. 79). Prior to the occasion in question the debtor also testified that her only gambling experience was playing the lottery and the football pool. (N.T. 79). When questioned about the type of games at which she gambled, her answers were vague and she had difficulty explaining the rules of some of the particular games. During her 13,000 mile cross-country excursion with her friend, which took her through such places like Williamsburg, St. Louis and San Francisco, she did not spend any of the money except for the purchase of some clothing (N.T. 32, 35, 45) and the mailing of $10,000 of Travelers checks to her mother to satisfy a preexisting debt. (N.T. 35). The clothing was valued on the schedules filed by the debtor at $1,500. Finally, the debtor testified that she could not produce anyone, even casino employees, who could substantiate her gambling losses.

Consequently, based on the totality of testimony and evidence presented, this court finds that the debtor has not satisfactorily and sufficiently accounted for the loss of assets and that the creditor in this matter has met its burden of proving that the debtor has not satisfactorily explained the dissipation of the assets in question. Based on the foregoing, this court denies debtor her discharge pursuant to 11 U.S.C. § 727(a)(5).