In re Kenneth Robert
DRENCKHAHN, Debtor.

PEOPLES STATE BANK OF
MAZEPPA, MN., Plaintiff,

v.

Kenneth Robert
DRENCKHAHN, Defendant.

Bankruptcy No. 3–85–1662.
Adv. No. 3–85–030.

United States Bankruptcy Court,
D. Minnesota,
Third Division.

Sept. 3, 1987.

Steven L. Erwin and Steven M. Hardy, Stewartville, Minn., for plaintiff.

D.A. Hoops, Rochester, Minn., for defendant.

MEMORANDUM TO ORDER OF JULY 31, 1987, DISPOSING OF PLAINTIFF'S AND DEFENDANT'S CROSS–MOTIONS FOR DISMISSAL AND/OR SUMMARY JUDGMENT

GREGORY F. KISHEL, Bankruptcy Judge.

On July 31, 1987, this Court entered an order denying Plaintiff's motion for dismissal without prejudice, granting Debtor's[1] motion for summary judgment, and abstaining from Debtor's request for awards of attorney fees and punitive damages in this adversary proceeding for denial of discharge under 11 U.S.C. § 727(a). The motions were originally argued to the Court on November 24, 1986, and submitted on the basis of that short oral argument and a substantial pre- and post-hearing development of the record. The Court enters this memorandum to set forth the Findings of Fact and Conclusions of Law, and general rationale, underlying the order disposing of the motions.

---

1. For the sake of clarity, Defendant Kenneth Robert Drenckhahn will be referred to as "Debt- or" in this Memorandum.

Debtor filed a voluntary petition under Chapter 7 of the Bankruptcy Code in this Court on July 24, 1985. At all times material to these adversary proceedings, Debtor was a Goodhue County, Minnesota farmer. Plaintiff was his major pre-petition secured creditor for a period of at least ten years, and held a claim against him in excess of $138,000.00 as of the date of filing.

Plaintiff's Complaint in these adversary proceedings seeks denial of Debtor's discharge in bankruptcy under 11 U.S.C. §§ 727(a)(2), 727(a)(3), and 727(a)(5). Plaintiff premises its cause of action on the course of dealing between its officers and Debtor on several secured loans from Plaintiff to Debtor, and specifically on events occurring on and after January 4, 1984. Plaintiff has not prayed in the alternative for a finding of nondischargeability of debt under 11 U.S.C. § 523(a). In a scheduling order dated May 2, 1986, the undersigned required the parties to make substantive motions by July 16, 1986. Counsel requested and were granted a two-month extension of this deadline. In early October, 1986, Debtor's counsel (untimely) submitted a motion in the alternative for dismissal or summary judgment, without setting it on for hearing. On October 9, 1986, the Court entered a scheduling order for briefing. On October 17, 1986, the Clerk of this Court received Debtor's Motion for Dismissal Without Prejudice. The Court then set November 24, 1986, as the date for hearing on the cross-motions.

Since then, the parties have submitted various "Objections," amended motions, affidavits and memoranda. These pleadings have thickened the file in this adversary proceeding by over one inch, when both parties ostensibly want to put this litigation to an end. The memoranda are rife with misspellings, typographical errors, mis-citations, inconsistent substantive arguments and conclusions, and numerous other failings burdensome to the Court in its review. The increasing stridency of the accusations summarily made by both parties' counsel in the memoranda is nothing short of astounding. It is obvious that the joinder of

these motions is only the lastest—and now the last—in a series of increasingly hostile legal confrontations between these parties, commencing in the throes of Debtor's financial difficulties as a farmer, continuing through a replevin action and post-replevin accusations of fraud and conversion, going through the convening of a Goodhue County grand jury at Plaintiff's behest to determine whether Debtor should be charged with the state-law felony offense of misappropriation of Plaintiff's security, and culminating in Debtor's bankruptcy filing. If every minute charge and counter-charge were examined and treated in detail, review of the record made on these motions would be stultifying.

This Court's function is not to assuage hurt feelings, perceived emotional slights, or a party's sense of degradation and betrayal—regardless of whether those wrongs are alleged by a debtor claiming that a creditor failed to meet expectations born of assurances made in past credit transactions, or by a creditor claiming that a debtor fraudulently abused established trust. This Court's function *is* to fairly and promptly administer the Bankruptcy Code and Rules, applying appropriate procedural and evidentiary burdens and substantive law to reach a result consistent with Congressional intent. The record made on these motions has hampered rather than helped the Court to do this. All counsel are to blame. However, "using something more than a brush-hook but something less than a bulldozer," it is possible to clear away the excess verbiage to consider and decide the issues at hand.

## I. PLAINTIFF'S MOTION FOR DISMISSAL WITHOUT PREJUDICE.

■ Plaintiff's motion may be treated summarily. Plaintiff's counsel failed to properly place its dismissal without prejudice before the Court by failing to fully comply with LOC.B.BANKR.P. (D.Minn.) 116(c); thus, the Court must deny its motion.[2] First, the affidavit of no considera-

2. The Local Rule provides in pertinent part as follows:

tion required by the rule is executed by Plaintiff's counsel. There is no allegation on the face of the affidavit that counsel actually has first-hand knowledge that consideration has not passed between Plaintiff and Defendant. In any event, execution of such an affidavit by an attorney—rather than one of Plaintiff's officers or another person with actual knowledge—is unwise, if for no reason other than the professional responsibility questions it raises. *See* MINN.R.PROF.CONDUCT 3.7. Attorneys should in all but the rare case refrain from executing factual affidavits on behalf of their clients—a practice currently all too common in this Court, and one which should be actively discouraged.

Further, Plaintiff did not notify all creditors of the hearing on its request for dismissal, as required by the local rule. An objection to discharge under 11 U.S.C. § 727(a) (as opposed to an exception to the dischargeability of a particular debt under 11 U.S.C. § 523(a)) affects all parties in interest to the bankruptcy case. A private creditor who commences a § 727(a) proceeding takes on some of the attributes of a trustee, advancing the interests of all of a debtor's creditors. He challenges conduct on the debtor's part which goes beyond a mere harm to the plaintiff-creditor's individual pecuniary interests. Conduct properly addressed under § 727(a) is a broad, deliberate failure on the debtor's part to act fairly, equitably, and responsibly in the conduct of debtor-creditor relations, resulting in a more pervasive injury to bankruptcy's equitable process of adjustment of those relations. *In re Harrison,*

71 B.R. 457, 459 (Bankr.D.Minn.1987). BANKR.R. 7041 requires notice to the Chapter 7 Trustee of the proposed dismissal of a non-trustee creditor's adversary proceeding objecting to discharge. Local Rule 116(c) also requires general notice, recognizing that the Trustee is not the only party in interest to the dismissal issue. Plaintiff's counsel's failure to comply with this procedural requirement is inexplicable, as he refers to Local Rule 116(c) in his affidavit of no consideration.

A § 727(a) objection to discharge joins one of the gravest possible issues in a Chapter 7 case; a creditor should commence such a proceeding only after marshalling compelling evidence of all of the elements of one or more of the subdivisions of § 727(a). Consistent with Congressional intent, the statute governing objections to discharge is to be construed strictly against the objecting creditor and liberally in favor of the debtor. *In re Devers,* 759 F.2d 751, 754 (9th Cir.1985). The objecting creditor bears the initial burden of proof, which is a heavy one. *In re Schermer,* 59 B.R. 924 (Bankr.W.D.Ky.1986). The local rules make it difficult for a creditor to unilaterally terminate such a proceeding largely because a creditor should not commence one lightly. Strict enforcement of Local Rule 116(c) is a proper deterrent to future abuse of § 727 by private institutional creditors. Plaintiff has shown no reason why the Court should not strictly apply Local Rule 116(c) here and, accordingly, the Court will not even consider its motion for dismissal without prejudice.[3]

*Complaints* A complaint objecting to discharge may not be dismissed under Rule 7041 at the plaintiff's instance except by order of the court after hearing on notice to all creditors and other parties in interest and after the plaintiff has filed an affidavit stating that nothing has been received by or promised to the plaintiff in consideration of the request for dismissal.

3. It is a mystery why Plaintiff obdurately refused to concede to Debtor's request for dismissal with prejudice. Its counsel admitted at hearing that Plaintiff did not intend to re-file an objection to discharge. (There is a serious question as to whether Plaintiff could successfully re-file and maintain an objection to discharge

after dismissal of an earlier discharge proceeding. *See Davis v. Lewis,* 36 B.R. 88 (E.D.Ark. 1984).) The only result of Plaintiff's obstinacy has been an analysis of the issues by the Court more thoroughgoing than either party wanted or needed. Further, Plaintiff has put itself in a position that could not be characterized as internally consistent. It argues that prosecution of this action has not benefited it and (at least inferentially) that it is not worth Plaintiff's effort to follow it through to judgment—while at the same time insisting that there is ample evidence that Debtor committed acts heinous enough to inevitably result in a victory in Plaintiff's favor were it to proceed.

## II. DEFENDANT'S MOTION FOR DISMISSAL OR SUMMARY JUDGMENT.

Defendant's motion requires more extended treatment, in part because Plaintiff's complaint alleges grounds for denial of discharge under three different subsections of § 727(a), and in part because the Court must separate counsel's summary maledictions from the evidentiary record presented. After a winnowing-out of the extraneous accusations, several kernels of undisputed fact emerge.[4] First, it is clear that Debtor engaged in grain farming during the 1984 crop year. After Plaintiff denied him an operating loan for that year, he obtained seed and fertilizer on credit from the Goodhue Co-operative Elevator and then sold his 1984 crop on October 4, 1984, to that elevator and the Pine Island Elevator. It is also undisputed that Debtor directed the proceeds of the 1984 crop (of a total of $38,696.00) to the following expenses of that crop:

| | |
|---|---|
| Goodhue Elevator (seed loan) | $19,179.00 |
| Debtor's mother (land rent) | $10,346.00 |
| Farm and harvest labor | $ 3,200.00 |
| Machinery repair | $ 3,600.00 |
| | $36,325.00 |

It also appears that Debtor diverted the balance of $2,371.00 to other miscellaneous expenses for his farming operation and, probably, for his own living expenses.[5] The Bank claims a perfected security interest in the 1984 crop under a security agreement executed by Debtor on January 4, 1984, perfected by the filing of a financing statement with the Goodhue County Recorder on January 13, 1984.

The Bank also claims a valid and perfected security interest in all of Debtor's farm equipment and machinery, under a 1974 security agreement and several renewals or replacements of it. The security agreement enumerated specific items of equipment, including the following items which Plaintiff now alleges were not present and available when it repossessed its security from Debtor in December, 1984, and when it finally conducted its replevin sale in April, 1985:

1961 Allis-Chalmers D–17 tractor

1961 John Deere Model B tractor

1976 Chevrolet 3/4 ton pickup truck

1968 New Holland baler

40 foot Owatonna elevator

12 foot International grain drill

In his answers to Plaintiff's interrogatories and in several affidavits, Debtor has stated that the relevant security agreement entries for the 1961 John Deere Model B tractor and the International grain drill were mistaken duplicates of other scheduled items of similar character. He also states that the 1961 Allis-Chalmers D–17 tractor was an item which he had rented for several years and never owned, that the Bank voluntarily released its lien on the 1976 Chevrolet pickup truck in 1979, that he disposed of the 1968 New Holland baler in the fall of 1984 as junk for nominal consideration of $85.00, and that the Owa-

---

**4.** Though Debtor's motion is captioned in the alternative, Debtor has made numerous references to affidavits, discovery responses, and other pleadings outside Plaintiff's complaint; thus, one must treat the motion as one for summary judgment rather than as one for dismissal on the pleadings. FED.R.CIV.P. 12(b), *made applicable to this adversary proceeding by* BANKR.R. 7012(b). Entry of summary judgment in favor of the moving party is mandatory "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits [supporting the motion], if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED.R.CIV.P. 56(c), *made applicable to this adversary proceeding by* BANKR.R. 7056.

**5.** In a Memorandum filed on November 4, 1986, Debtor's counsel summarily alleges that the four major categories of expense detailed above consumed the full proceeds of the 1984 crop. A totalling of the expenses falling in the four categories and a comparison of that total with the proceeds shows this is not the case. In view of the circumstances (a relatively minimal surplus, Debtor's uncontroverted statement that he had to meet additional expenses such as insurance, and the certainty that he also had personal living expenses to meet), the existence of a minor surplus, and Debtor's failure to provide a penny-for-penny accounting of it, certainly do not support findings that Debtor improperly disposed of or concealed the surplus, or has not properly accounted for it. *See In re Johnson,* 42 B.R. 755, 757–58 (Bankr.E.D.Mo.1984); *In re Wheeler,* 38 B.R. 842, 846 (Bankr.E.D.Tenn. 1984).

tonna elevator had been rendered inoperable as junk about ten years before the repossession. Plaintiff has produced no evidence that the existence, ownership, and/or disposition of all of these items at material times was not as Debtor has stated under oath in this litigation. The credibility of Debtor's statements is buttressed by Plaintiffs' employees' apparent failure to monitor and fully inventory Plaintiff's collateral in any meaningful way during at least the last several years of a ten-year lending relationship. There is no genuine issue of material fact as to the ownership and disposition of relevant items of equipment.

As the last major factual basis of its complaint, Plaintiff notes that, in the January, 1984 financial statement, Debtor represented that he held an unencumbered ownership interest in 40 acres of real estate in Belvedere Township, Goodhue County (which asserted interest shall be referred to as "the Belvedere Township property" for brevity), and held a right to "settlement due on house," consisting of a lien against his former marital homestead granted to him in a divorce decree, of a value of $50,000.00. It further alleges that Debtor promised to grant Plaintiff a lien or security interest in both of these alleged assets during discussions in December, 1983 and January, 1984 between Debtor and bank officers.

The nature of these asserted property rights is established under two state-court decrees, which the parties have made a part of the record on these motions. Plaintiff has produced no evidence to rebut factual findings—ior legal conclusions—which might be drawn from them.

In a Second Amended Judgment and Decree entered in Olmsted County Court, Family Division, on January 5, 1984, Marit Drenckhahn, Debtor's ex-wife, was awarded their Goodhue County Minnesota marital homestead, subject to a lien in the amount of $50,000.00 payable to Debtor on October 26, 1987, or at a prior date in the event of certain contingencies. Debtor's ex-wife was given the right to offset any accrued arrearages in Debtor's child support obligation against the lien. Debtor was restrained from assigning his interest in the lien, and from encumbering it prior to approval by the dissolution court.[6]

In a Final Decree of Distribution entered in Goodhue County Probate Court in the probate of the estate of Adolph W. Drenckhahn, Debtor's deceased father, Debtor's mother, Violet M. Drenckhahn, was decreed a life estate in all of the decedent's real estate, and Debtor was given an undivided one-fourth remainder interest in that real estate, to be held in common with his three siblings. That order was entered on April 11, 1966. At all times it was a matter of public record in Olmsted County. Debtor's mother was alive at all times between 1984 and the date of hearing on the parties' motions, and had not transferred her interest in her deceased husband's farm to any person or entity.

There is no genuine issue of fact as to the foregoing events and circumstances; Plaintiff has produced no evidence that the actual status of Debtor's ownership interests in any of the assets in question was in any way different from the status alleged

---

**6.** Statements in various pleadings in this adversary proceeding suggest that Debtor transferred, or at least attempted to transfer, his lien interest in the marital homestead to his two sons in satisfaction of child support arrearages and prospective child support obligations, at some unknown date. Plaintiff has produced no objective evidence of the actual or attempted transfer. Debtor states in his October 31, 1986 affidavit that he "transferred said lien to his children by quit claim deed," but then goes on to state that he did so only on prior advice of counsel to the effect that he was transferring exempt property, presumably in satisfaction of a nondischargeable debt. Plaintiff could have generated evidence of Debtor's intent in the transfer via discovery but apparently did not do so, and did not bring forward any such evidence on these motions. While Plaintiff argues that the alleged transfer itself would be a valid basis for denial of discharge under § 727(a)(a)(A), its shrillest arguments in relation to the transfer focus on Debtor's alleged fraudulent representation that he could and would grant the Bank a lien against his dissolution-lien interest, and his subsequent failure to do so, and Debtor's alleged failure to account for his inability to grant the lien, as grounds for objection to discharge under § 727(a).

by Debtor in his discovery responses and affidavits, at all material times from late 1983 until Debtor filed his bankruptcy petition.[7] Plaintiff has also produced no evidence to dispute the disposition of the 1984 crop proceeds. Finally, Plaintiff has produced no evidence that Debtor has secreted, altered, destroyed, or otherwise tampered with any books or records relating to his finances, and no evidence suggesting that Debtor did, or should have, ever accounted for these various events and transactions in any fashion other than the way he has in this litigation. The Bank then relies on these four separate sequences of events—Debtor's disposition of the 1984 crop; Debtor's alleged disposition of the various items of farming equipment in which it asserted a secured interest; Debtor's assertion of encumberable ownership interests in the dissolution lien and the Belvedere Township property; and Debtor's alleged transfer of his dissolution lien rights—and Debtor's alleged failure either to grant it security rights in, or to protect its asserted security rights in, the property involved in these events, as the basis of its complaint under 11 U.S.C. §§ 727(a)(2), (3), and (5). While the separate factual sequences by their nature are not all equally applicable to the separate counts under § 727, individual analysis is necessary due to the imprecision and incompleteness of Plaintiff's counsel's written argument. It is clear, however, that there is no genuine issue of material fact on any of the objections to discharge pleaded by Plaintiff. It is also clear that Plaintiff, as the party objecting to discharge, has the burden of proving up all elements of the objection. BANKR.R. 4005; *In re Scarbaci,* 34 B.R. 344 (Bankr.S.D.Fla.1983).

### A. *§ 727(a)(2): Transfer of property with intent to hinder, delay, or defraud a creditor.*

Plaintiff's major objection to discharge is founded on the following provision of 11 U.S.C. § 727(a)(2):

(a) The court shall grant the debtor a discharge, unless—

. . . . .

(a) the debtor, with intent to hinder, delay, or defraud a creditor ... has transferred, removed, destroyed, mutilated, or concealed—

(A) property of the debtor, within one year before the date of the filing of the petition ...

A petitioning creditor must prove four basic elements under § 727(a)(2)(A):

1. A transfer of property occurred, made by the debtor or made at his sufferance;

2. The transfer involved property of the debtor;

3. The transfer was made within one year of the commencement of the bankruptcy case;

4. The debtor had, contemporaneously with the transfer, intent to hinder, delay, or defraud a creditor.

*In re Clausen,* 44 B.R. 41, 43 (Bankr.D. Minn.1984). In the four sequences of events, Debtor's sale of his 1984 crop, his allegedly-wrongful disposition (as actually occurred or as accused by Plaintiff) of various items of farming equipment, and his alleged transfer to his children of his dissolution lien rights, warrant application of § 727(a)(2)(A).

As to the transfer of the 1984 crop, it is uncontested that Debtor did in fact transfer the crop to two different elevators within one year of the commencement of his bankruptcy case; thus, Plaintiff has satisfied the first and third elements. However, Plaintiff's case as to the transfer of the 1984 crop fails as a matter of law as to the second element; in addition, Plaintiff has failed to come forward with evidence to rebut Debtor's statement that in making the transfer he never had the specific intent to hinder, delay or defraud it, required under the fourth element, and an inference of such an intent is utterly unsupported by the record.

---

**7.** Indeed, all the Bank has put into controversy was whether Debtor actually or impliedly made representations that he had full, otherwise—unencumbered ownership interests in all of the assets in question when he signed the security agreement. Though Debtor's denial that he made such representations creates a dispute of fact, it does not give rise to a genuine issue of fact that is material to an inquiry under § 727(a)—as will be seen.

■ In complaining of Debtor's sale of the 1984 crop, Plaintiff is protesting an alleged unauthorized disposition of its security, and nothing more. While such malfeasance may be addressed in a bankruptcy case, it is not appropriately addressed under 11 U.S.C. § 727(a)(2)(A). This court agrees with those courts which have found that an unauthorized sale of a creditor's collateral security is a transfer, removal, or destruction *of property of that creditor*, and not of "property of the debtor" within the meaning of § 727(a)(2)(A). *In re Holtz*, 62 B.R. 782, 787 (Bankr.N.D.Iowa 1986); *In re Ellefson*, 54 B.R. 16, 17 (Bankr.W.D. Wis.1985); *In re Harris*, 8 B.R. 88, 90–91 (Bankr.M.D.Tenn.1980); *In re McCloud*, 7 B.R. 819, 822 (Bankr.M.D.Tenn.1980). *See also In re Morris*, 12 B.R. 509, 511 (Bankr. D.Nev.1981) (debtors' transfer of secured property to lienholder whose security interest was senior to that of complaining creditor in same property did not transfer property of debtors within meaning of § 727(a)(2)(A)). The purpose behind § 727(a)(2)(A) is to deny discharge to a debtor who intentionally hinders, delays, or defrauds creditors by transferring property that would otherwise be property *of the bankruptcy estate. In re Clausen*, 44 B.R. at 43. As valid and enforceable liens survive a bankruptcy filing and continue to encumber property in the hands of the trustee until avoided to the extent possible under the various "strongarm" provisions of the Bankruptcy Code, that portion of the value of encumbered property which is subject to enforceable liens is not subject to the claims of general unsecured creditors through bankruptcy estate administration and, essentially, is not property of the estate to any extent beyond bare title and, possibly, the right to use and possession during foreclosure redemption periods.

■ A creditor complaining of an unauthorized disposition of its security may successfully obtain an exception of its debt from discharge under 11 U.S.C. § 523(a)(6), if it can prove that the debtor acted willfully and maliciously in making the disposition. *See, e.g., In re Long*, 774 F.2d 875 (8th Cir.1985); *In re Egan*, 52 B.R. 501 (Bankr.D.Minn.1985); *In re Nelson*, 67 B.R. 491 (Bankr.D.Minn.1985); *In re Holtz.* However, even if a creditor makes out a case for nondischargeability under § 523(a)(6) under this complex of facts, that proof, standing alone, does not merit the harsh sanction of denial of discharge under § 727(a)(2). *In re Holtz*, 62 B.R. at 787. Here, it is clear that, while Plaintiff had a valid and perfected security interest in Debtor's 1984 crop, that security interest encumbered the crop to the full extent of its value of approximately $40,000.00.[8] Thus, in selling the crop without paying the proceeds to Plaintiff, Debtor was not transferring *his* property in contravention of 11 U.S.C. § 727(a)(2)(A).

■ Plaintiff's case under § 727(a)(2)(A) also fails as to the alleged unauthorized disposition of farming equipment, for the same reason as to several items and for a more basic reason as to a number of other entries on Debtor's equipment schedules attached to Plaintiff's security instruments. Out of all of the scheduled equipment not present at repossession, Plaintiff could be said to have actually had security interests in only the 1968 New Holland baler and the Owatonna elevator. Debtor's disposition of those items is, for the reasons discussed above, not properly addressed under § 727(a)(2)(A).[9] On a more basic level, it has failed to demonstrate that Debtor ever even owned a 1961 John Deere Model B tractor,[10] International grain drill, or a 1961

---

8. The parties do not dispute that, at all relevant times from mid–1983 on, Plaintiff was seriously undersecured. The parties have ignored the issue of whether Debtor's 1984 suppliers and landlord had input liens against the crop and its proceeds that were senior to Plaintiff's security interest. It is not necessary to address the issue. However, if the suppliers and landlord had superior, all-encumbering liens, any effective infringement on Plaintiff's security rights was minimal, or nonexistent.

9. It would seem that Plaintiff would have a nearly-insuperable burden under § 523(a)(6) in proving that Debtor acted with malice toward Plaintiff in disposing of these two items, which were plainly of negligible value in any event.

10. As Debtor noted, it seems that there is no such thing as a 1961–model John Deere B tractor. Deere apparently discontinued manufacture of the B line in the mid–1950's.

Allis-Chalmers D–17 tractor; because Debtor apparently never even owned these items, it could scarcely be said that they were either his property within the meaning of § 727(a)(2)(A) or that Plaintiff had protectable property interests in them within the meaning of § 523(a)(6); further, as Debtor never owned them, he could not be said to have ever transferred them. *In re Ericson*, 50 B.R. 96 (Bankr.D.Minn.1985) (Act case) (Creditor must prove as a threshold matter that bankrupt had individual ownership interest in property allegedly transferred, to sustain objection to discharge under § 14(c) of the Bankruptcy Act). *Compare In re D'Avignon*, 25 B.R. 838, 841 (Bankr.D.Vt.1982) (for purposes of 11 U.S.C. § 727(a)(5), creditor must first prove actual existence of assets which should be in debtor's possession but are missing, and then show debtor has failed to satisfactorily explain their absence). Again, it is clear that, as to its accusations of wrongful disposition of farm equipment, Plaintiff has failed to come forward with proof to rebut the clear evidence that in these transactions Debtor was not disposing of his own unencumbered property, or of surplus equity, which would otherwise be available to creditors.

■ This leaves the alleged transfer of Debtor's dissolution lien rights to his children. At least on its face, this is the most troubling of the events argued by Plaintiff under § 727(a)(2)(A). While Plaintiff has not produced any evidence of the actual amount of child support arrearages and prospective obligation which were forgiven in consideration for the alleged transfer, it can be inferred from the terms of the divorce decree in the record that the total value of these components did not exceed $14,000.00. The fact that Debtor and his former counsel apparently discussed the question of whether the proposed transfer would be subject to legal challenge evidences Debtor's awareness that he was then financially distressed and near bankruptcy, notwithstanding Plaintiff's failure to elicit any direct evidence of a motivation

founded in economic desperation. *Standing alone, without challenging evidence of contrary intent,* these factors would support an inference of a transfer without consideration to a family insider with intent to hinder, delay, or defraud creditors. See *In re Reed,* 18 B.R. 462 (Bankr.E.D.Tenn.1982). This would satisfy all of the elements of § 727(a)(2)(A). However, the record does not mandate or even support the inference of fraudulent intent—and, as will be seen, Debtor is entitled to summary judgment on the cause of action based on this event as well.

■ The Court's conclusions as to all sequences of events other than the dissolution lien transfer would in themselves merit a grant of summary judgment in Debtor's favor on all but one of the § 727(a)(2)(A) claims. See *Celotex Corp. v. Catrett,* 477 U.S. 317, ——, 106 S.Ct. 2548, 2552–3, 91 L.Ed.2d 265 (1986). However, Plaintiff's case under § 727(a)(2)(A) also fails as a matter of law on the intent element, as to all transfers of property (actual or alleged) of which Plaintiff complains. Plaintiff must show that, in disposing of property, Debtor acted with *actual* intent to hinder, delay, or defraud a creditor. *Lovell v. Mixon,* 719 F.2d 1373, 1376–7 (8th Cir.1983); *In re Bateman,* 646 F.2d 1220, 1222 (8th Cir.1981); *In re Schmit,* 71 B.R. 587, 590 (Bankr.D.Minn.1987); *In re Tveten,* 70 B.R. 529, 532 (Bankr.D.Minn.1987). Plaintiff has failed to produce any evidence that Debtor intended to adversely affect its interests (or the interests of his general creditors) in disposing of its security, or even any evidence from which an inference of such intent could be drawn."[11] Because of Plaintiff's refusal to provide Debtor with an operating loan for the 1984 crop year, he had to seek input financing elsewhere. Debtor—correctly or not—concluded that the parties extending him the credit necessary to continue farming and to produce the crop had first claim to the crop proceeds. The record is utterly devoid of any evidence that this conclusion was cou-

---

11. The record could in fact support a finding that, at least at some point before his sale of the 1984 crop, Debtor did not believe that Plaintiff

held a security interest in the crop, or at least was confused about whether it did.

pled with an intent to injure Plaintiff in so applying the proceeds.[12] To the extent that Debtor even owned specific equipment which was not present on repossession, there is no evidence that he disposed of it with any intent to harm Plaintiff; to the contrary, he got rid of the two items really at issue in order to rid himself of useless junk. Finally, Plaintiff has produced no evidence to counter Debtor's statement— which is credible—that he transferred his dissolution lien interest on an attorney's advice that he was entitled to an exemption in the lien (presumably to be asserted as homestead) and, therefore, did not act with an awareness that he was depriving general creditors of property otherwise subject to their claims. On a motion for summary judgment, the opposing party cannot rely on a mere legal argument that an inference in its favor is possible on the basis of a certain combination of circumstances or sequence of events, when the movant produces evidence that (in the absence of challenge) is so one-sided as to obviate the need for trial. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, ——, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986). It was incumbent on Plaintiff to generate (via discovery if necessary) and produce some evidence to counter Debtor's protestation that he was innocent of fraud. It did not do so, apparently relying on its own motion for dismissal to end the matter. The Court has concluded that there is no triable fact issue on the intent element arising out of the dissolution lien transfer. Intent to harm a creditor by a transfer of property cannot be found where the evidence is that the debtor made the transfer out of ignorance of, or on a mistaken view of, the debtor's and his creditors' legal rights. *In re Scarbaci,* 34 B.R. at 346.

Plaintiff's case thus fails as a matter of law as to the fourth element, on all of the transfers alleged. Debtor is entitled to entry of judgment in his favor on the count of Plaintiff's complaint sounding under 11 U.S.C. § 727(a)(2)(A).

**B. *§ 727(a)(3): Failure to keep and preserve recorded information relating to Debtor's financial condition or business transactions.***

Plaintiff's second count sounds under the following language of 11 U.S.C. § 727(a)(3):

(a) The court shall grant the debtor a discharge, unless—

. . . . .

(3) the debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case

While § 727(a)(3) could be interpreted in a draconian fashion to require maintenance, preservation, and production of comprehensive records of every minute detail of a bankruptcy debtor's financial and business activity as a precondition to grant of discharge, it is clear that such an interpretation is wholly inappropriate. *Rhoades v. Wikle,* 453 F.2d 51, 53 (9th Cir.1971) (Act case); *Broad Nat'l Bank v. Kadison,* 26 B.R. 1015, 1018 (D.N.J.1983); *In re Williams,* 62 B.R. 590, 593 (Bankr.N.D. Tex.1986).

■■■■ The obvious purpose of the statute is to "assure . . . the trustee and creditors that they will be provided with sufficient information with which they can assess the debtor's estate and general financial posture." *In re Shapiro,* 59 B.R. 844, 847–48 (Bankr.E.D.N.Y.1986). The adequacy of a debtor's books and records for the purposes of § 727(a)(3) must be gauged on a case-by-case basis, according to the special characteristics of the debtor's occupation, business, and personal financial structure. *In re Hogard,* 43 B.R. 590, 594 (Bankr.D.Minn.1984). *See also In re Reitz,* 69 B.R. 192, 197 (N.D.Ill.1986); *In re*

---

**12.** Plaintiff does not complain of Debtor's failure to account for the disposition of the 1984 crop and the disputed equipment in the count of its complaint sounding under § 727(a)(5). Had

it done so, the Court would find that Debtor has satisfactorily explained his disposition of any such assets, in his affidavits, and answers to Plaintiff's discovery.

*Williams,* 62 B.R. at 593. The adequacy of the debtor's financial records is determined after considering several relevant factors: the debtor's education, business experience, and sophistication; the complexity of the debtor's business; the amount of credit extended to the debtor during his business activity; and all other circumstances which should be considered in the interest of justice. *In re Escobar,* 53 B.R. 382, 384 (Bankr.S.D.Fla.1985). The Bankruptcy Court has wide discretion to determine adequacy. *In re Reitz,* 69 B.R. at 198; *In re Escobar,* 53 B.R. at 382; *In re Kottwitz,* 42 B.R. 566, 570 (Bankr.W.D.Mo.1984). The determination must always be made in light of the purpose of 11 U.S.C. § 727(a)(3), which is to serve the goal of fair dealing by making a debtor's right to discharge dependent on his ability to account, via written record, for his current financial condition and for the nature of his business transactions for a reasonable period in the past, upon the trustee's or creditors' demand. *In re Reitz,* 69 B.R. at 197; *Broad Nat'l Bank v. Kadison,* 26 B.R. at 1018; *In re Tackett,* 67 B.R. 354, 359 (Bankr.E.D.Tenn.1986); *In re Williams,* 62 B.R. at 593; *In re Grimes,* 58 B.R. 368, 371 (Bankr.W.D.La.1986); *In re Kinney,* 33 B.R. 594, 496 (Bankr.N.D.Ohio 1983); *In re Wilson,* 33 B.R. 689, 691 (Bankr.M.D.Ga. 1983).

Plaintiff seems to have added this count to its complaint in a "shotgun" approach. The complaint does not even quote or paraphrase the statutory language and refers only to the statute by section number; Plaintiff's counsel never addressed it in argument or memorandum; and neither party has seen fit to produce any hard evidence material to the issue on these motions. If one were for the sake of analysis (albeit ignoring the duties of the adversarial process) to construe the complaint most favorably to Plaintiff, the act complained of is Debtor's failure to produce books and records to document the disposition of the 1984 crop and the farming equipment, and to document the nature, extent, and alleged disposition of Debtor's rights to the dissolution homestead lien and the Belvedere Township property. While Debtor did not produce actual records relating to the disposition of the crop and the farming equipment on these motions, his affidavits and answers to interrogatories are detailed enough to support an inference that Debtor retained receipts and other records of his sale of the crop and disposition of farming equipment (to the extent he even owned particular items of equipment). The supporting records on the crop sale were certainly maintained by and available from the Goodhue Elevator Association, which by letter of September 24, 1985 to Plaintiff advised that it would not release the records "without a court order." Plaintiff's counsel could have obtained them via discovery in this adversary proceeding, and cannot complain either of their unavailability or inadequacy in support of a denial of discharge, at this late date.

The sale or abandonment of the two or three pieces of useless farming equipment does not merit preparation or preservation of extensive records to satisfy the particularized standard of § 727(a)(3). Debtor was a farmer who operated exclusively on rented land, and the only property he actually owned in connection with his farming activity was his equipment. Plaintiff has produced no evidence that Debtor was experienced or sophisticated in business or in any trade other than farming, and no evidence that either the nature and level of his farming business activity or his personal financial structure was so intensive or of such size to merit comprehensive and formal accounting, books and records. *Cf. In re Greenwalt,* 63 B.R. 555 (Bankr.D.Colo. 1986) (discharge denied to businessman-debtor on ground he failed to maintain or produce records to document claimed travel expenses of $15,000.00; court specifically noted business and income-tax reasons virtually mandated maintenance of such records by businessman in debtor's position). Though Debtor has not produced his actual records, the Court can properly infer—given Plaintiff's failure to argue that other inferences are appropriate—that Debtor maintained adequate books and records to account for the disposition of all of this property. The Court does so. *See*

*In re Goff,* 495 F.2d 199, 201 n. 2 (5th Cir.1984) and *In re Wilson,* 33 B.R. at 692 (both suggesting that certain business occupations—*specifically including that of small farmer*—are by their very nature such as to not compel the maintenance of extensive formal books and records under pain of denial of discharge in bankruptcy).

Plaintiff's § 727(a)(3) claim stemming from Debtor's asserted interests in the dissolution lien and the Belvedere Township property, and any disposition he may have made of them, is even less supportable. The only possible complaint is that Debtor did not maintain records from which the nature and disposition of these assets may now be determined. Debtor has produced two court decrees to establish the nature of these assets. He admits he executed a quitclaim deed and attempted to divest himself of the dissolution lien in favor of his sons. There is some question as to whether the transfer was legally effective. To the extent that he even accomplished the transfer, it cannot be said that Debtor failed to maintain adequate records in relation to the transaction; it was obviously accomplished without cash consideration and on an informal basis, and was not such as to merit or mandate the maintenance or retention of extended books, records, or documents. To the extent that justification for the transfer was called for, it could have been elicited by deposing Debtor or the other parties involved.

Plaintiff has not strenuously argued its objection to discharge under § 727(a)(3). In any event, for the reasons stated, it is clear that Debtor is entitled to entry of judgment as a matter of law on the count.

C. *§ 727(a)(5): Failure to explain satisfactorily any loss or deficiency of assets to meet liabilities.*

▮▮▮▮ Plaintiff's third count sounds under the following language of 11 U.S.C. § 727(a)(5):

(a) The court shall grant the debtor a discharge, unless—

. . . . .

(5) the debtor has failed to explain satisfactorily, before determination of denial of discharge under this paragraph, any loss of assets or deficiency of assets to meet the debtor's liabilities . . .

On its face, the statute allows a debtor to make satisfactory explanation of loss or deficiency of assets at any time "before determination of denial of discharge under [the] paragraph." Thus, a debtor may come forward with an explanation of loss or deficiency of assets during the trial of an objection to discharge under § 727(a)(5), and present that explanation to the court for its determination as to whether or not it is satisfactory. It is clear, however, that this section is directed toward insuring debtors' *accountability* for past transactions, and does not require or even allow inquiry into the substantive character of the loss or deficiency of assets itself. *In re Nye,* 64 B.R. 759, 762 (Bankr.E.D.N.C. 1986). Section 727(a)(5) does not require that the explanation itself be meritorious, or that the loss or other disposition of assets be proper; it only requires that the explanation satisfactorily describe or account for the disposition. *Id.* The court's inquiry is limited to whether the debtor has made or now makes an explanation for the loss or deficiency of assets at issue, and whether that explanation is satisfactory. These are questions of fact. *In re Chalik,* 748 F.2d 616, 619 (11th Cir.1984); *In re Stuerke,* 61 B.R. 623, 626 (Bankr. 9th Cir. 1986). To be satisfactory, the explanation must convince the bankruptcy judge. *In re Chalik,* 748 F.2d at 619; *In re Reed,* 700 F.2d 986, 993 (5th Cir.1983); *In re Yokley,* 61 B.R. 198, 200–01 (Bankr.W.D.Ky.1986). The standard is one of reasonableness and credibility. *In re Hendren,* 51 B.R. 781, 788 (Bankr.E.D.Tenn.1985); *In re Cohen,* 47 B.R. 871, 874 (Bankr.S.D.Fla.1985). The debtor must explain his losses in such a manner as to evidence his good faith in the conduct of his financial affairs and in his efforts to make the explanation. *In re Shapiro,* 59 B.R. at 848; *In re Hendren,* 51 B.R. at 788; *In re Cohen,* 47 B.R. at 874; *In re Wheeler,* 38 B.R. 842, 846 (Bankr.E.D.Tenn.1984). The question of satisfactoriness again turns on the nature of the debtor's business, financial affairs, and lifestyle, *In re Glaser,* 49 B.R. 1015,

1020 (S.D.N.Y.1985), and the Court is afforded broad discretion to make the determination in light of all the circumstances before it. *In re Martin,* 698 F.2d 883, 886 (7th Cir.1983); *In re Blasini,* 67 B.R. 373, 375 (D.P.R.1986); *In re Cohen,* 47 B.R. at 875. In any event, the debtor must come forward with something more than generalized, vague, and uncorroborated statements in oral testimony. *In re Dolin,* 799 F.2d 251, 253 (6th Cir.1986); *In re Chalik,* 748 F.2d at 619; *In re Martin,* 698 F.2d at 886; *In re Stuerke,* 61 B.R. at 626; *In re Blasini,* 67 B.R. at 375; *In re DeGase,* 68 B.R. 504, 510 (Bankr.W.D.Mo.1986); *In re Simone,* 68 B.R. 475, 479 (Bankr.W.D.Mo. 1983); *In re Yokley,* 61 B.R. at 200–01; *In re Schermer,* 59 B.R. 924, 925 (Bankr.W.D. Ky.1986); *In re DeLancey,* 58 B.R. 762, 769 (Bankr.S.D.N.Y.1986); *In re Switzer,* 55 B.R. 991, 998 (Bankr.S.D.N.Y.1986); *In re Hendren,* 51 B.R. at 783; *In re Ramos,* 8 B.R. 490, 496 (Bankr.W.D.Wis.1981). Many cases appear to require production of actual books, financial records, and documents to corroborate a debtor's in-court testimony. *See, e.g., In re Switzer.* The better (and more flexible) rule would not mandate denial of discharge for failure to produce corroborating papers where the debtor's testimonial explanation bears sufficient credibility. *In·re Church,* 47 B.R. 186, 192 (Bankr.E.D.Tenn.1985). Thus, if a debtor's explanation is sufficiently specific and credible, the court may not deny discharge under § 727(a)(5) and the complaining creditor is relegated to other subsections of § 727(a) to support a denial of discharge premised upon the blameworthiness of the actual process of loss or deficiency of assets.

Because § 727(a)(5) is ultimately designed to promote the integrity of the bankruptcy process by punishing a debtor's failure to respond to proper inquiry by a creditor or the trustee, the factual inquiry which must be made in a summary judgment motion in a § 727(a)(5) action goes only to the facial sufficiency of the explanation and accounting made, and to its indicia of credibility; it does not go to the facts asserted in the explanation. In the case at bar, Plaintiff's complaint under § 727(a)(5) focuses on Debtor's alleged failure to account for or to be forthcoming with information as to the nature and/or disposition of his alleged rights in the dissolution homestead lien and the Belvedere Township property. In his affidavits and various responses to discovery, Debtor has complied with his duty under § 727(a)(5). He has been sufficiently forthcoming about the nature of his remainder interest in the Belvedere Township property and the nature and possible transfer of his dissolution homestead lien to satisfy the disclosure requirements which § 727(a)(5) is designed to vindicate.[13] The fact that Debtor may once have promised Plaintiff's employees that he would either encumber asserted interests in these assets in Plaintiff's favor, or that he would liquidate them and apply the proceeds to Plaintiff's debt, is simply not properly addressed under § 727(a)(5).[14]

Plaintiff has not come forward with any evidence—or even any specific legal argument—to challenge the adequacy of Debtor's explanations of the deficiency or loss of assets which it alleges. Given Plaintiff's failure to rebut, the Court can fairly conclude that Debtor's explanations are satisfactory. *In re Wheeler,* 38 B.R. at 846–7. He is therefore entitled as a matter of law to judgment in his favor on Plaintiff's count under § 727(a)(5).

D. *Unclassified Complaints re: Debtor's Failure to Grant Liens to Plaintiff.*

As noted *infra* at p. 704, Plaintiff complains loudly of Debtor's alleged bland-

---

13. This ruling in favor of Debtor on the discharge objection founded on the dissolution lien transfer has no effect on the issue of whether the transfer is avoidable by Debtor's Chapter 7 Trustee on the basis of this Court's decision in *In re Olson,* 66 B.R. 687 (Bankr.D.Minn.1986). That is another matter for another proceeding, if the Trustee chooses to act. *See In re Nye,* 64 B.R. at 762.

14. These representations would have been properly addressed only under 11 U.S.C. § 523(a)(2)(A), to the extent that Plaintiff's officers relied on them in extending or refinancing Debtor's loan—if under any Bankruptcy Code provision. *But see In re Reder,* 60 B.R. 529, 536 (Bankr.D.Minn.1986) ("representation" contemplated by § 523(a)(2)(A) must be statement *of past or present fact*).

ishments that he held encumberable interest in the dissolution lien and the Belvedere Township property and would grant Plaintiff liens in them in late 1983 or early 1984. Even if Plaintiff were to prove that Debtor had made these false representations with some fraudulent intent, it is impossible to categorize them as bases for objections to discharge under 11 U.S.C. § 727(a). If anything, they may be the basis for exceptions to discharge under 11 U.S.C. §§ 523(a)(2)(A) (fraud) or 523(a)(2)(B) (false financial statement). Plaintiff's counsel did not plead exceptions to discharge in the alternative in Plaintiff's complaint. It is, therefore, not necessary to even address any wrongdoing by Debtor in these events. *See* n. 14, *infra* at p. 710.

## III. DEBTOR'S MOTIONS FOR IMPOSITION OF SANCTIONS AND AWARDS OF PUNITIVE DAMAGES AND ATTORNEY FEES.

The remaining issue is raised by Defendant's repeated and persistent requests for imposition of sanctions on Plaintiff for its alleged "overzealous" and "malicious" pursuit of Debtor through this and other legal forums.

A review of the file reveals that Debtor's request for attorney fees and sanctions started modestly and, like Topsy, "it just growed." Debtor's answer, interposed by prior counsel, contains a standard boilerplate request for judgment in his favor and for allowance of his costs, disbursements and attorney fees. The answer contains no counterclaim against Plaintiff and does not cite any federal statute or rule in support of its prayer for sanctions. In Debtor's original "Motion to Dismiss, or in the Alternative Motion for Summary Judgment," filed on October 15, 1986, his present counsel requested an award of attorney fees from Plaintiff in the amount of $2,000.00, and "his costs and expenses and penalties determined by the Court." After Plaintiff filed its request for dismissal, Debtor's counsel filed on October 22, 1986 a document titled "Objection to Dismissal at Instance of Plaintiff," in which the requested attorney fee award grew to $3,500.00 and, for the first time, an award of punitive damages (in the sum of $20,000.00) was requested. In a memorandum of law to support this "Objection," filed on November 17, 1986, Debtor's counsel first cited FED.R.CIV.P. 11 and 28 U.S.C. § 1927, as well as the perennial ground of "bad faith," as the legal bases for Debtor's request for attorney fees and sanctions. In the memorandum of law, Debtor's counsel now argued that punitive damages in an amount of "at least one-third of the amount that Plaintiff has attempted to have exempted [sic] from discharge herein ... or $45,900.00," should be awarded to him. Counsel did *not* accompany the memorandum with an amended motion with a corresponding prayer for relief. Lastly, in a "Fee Statement," filed on December 17, 1986, Debtor's counsel now requested an award of attorney fees and costs for his own services in connection with this adversary proceeding (for a total of $4,853.20), and "for excess fees [paid to Debtor's prior counsel] incurred as a result of this and prior actions percipitated [sic] by Plaintiff." The latter request was for attorney fees for services performed by Debtor's prior counsel as early as October 22, 1984, including the defense of Plaintiff's state court replevin action, representation in connection with the grand jury proceedings, and defense in the early stages of this adversary proceeding, for a total of $1,568.00. In the "Fee Statement," Debtor renewed his request for an award of punitive damages.

 Debtor's request for an award of sanctions is presented in such a disorganized and inconsistent fashion, and consists of so many different components, that it is difficult to either analyze or dispose of it in a succinct fashion. Toward the end of his pleading barrage on Plaintiff, Debtor's counsel seemed to suggest that an award of punitive damages was mandated by the totality of Plaintiff's debt-collection and other efforts directed toward Debtor, going back all the way to the fall of 1984. The fact that Debtor now requests an award of his attorney fees in connection with several pre-bankruptcy legal proceedings buttresses this conclusion. As such, a major com-

ponent of Debtor's request (attributable to legal proceedings, civil and criminal, occurring and completed prior to the commencement of Debtor's bankruptcy case) simply cannot be characterized as a request for an award of sanctions for party or attorney misconduct in connection with this adversary proceeding. It is, rather, a claim for damages for abuse of process and/or malicious prosecution. As pre-petition cause of action, it passed into Debtor's bankruptcy estate upon the commencement of his Chapter 7 case. 11 U.S.C. § 541(a)(1). Since Debtor did not claim any such cause of action as exempt, the cause of action is subject to his Chapter 7 Trustee's liquidation and administration, and it is simply not suited for litigation in this adversary proceeding. As it is a pre-petition cause of action for damages in favor of Debtor, there is even a threshold question as to whether it may be classified only as a "related proceeding," in which this Court could not enter final judgment in the absence of consent by the parties. (To be sure, it probably constitutes a "counterclaim by the estate against persons filing claims against the estate" within the meaning of 28 U.S.C. § 157(b)(2)(C), and hence is likely a core proceeding.) Regardless of the characterization, given the fact that it involves factual issues arising prior to the commencement of this case and legal issues exclusively arising under and governed by state law, it seems most appropriate for this Court to abstain from determining it in the interests of justice and comity with state courts, and out of respect for state law, under 28 U.S.C. § 1334(c)(1).[15] *See In re Arctic Enterprises, Inc.,* 68 B.R. 71, 77–8 (D.Minn.1986) (discretionary abstention under 28 U.S.C. § 1334(c)(1) appropriate where it is more proper or convenient to have state court decide particular issues arising exclusively under state law, or where state court is more conveniently situated or better suited to decide such issues by their nature). The Court has done so.

■ This then leaves Debtor's request for imposition of sanctions for Plaintiff's actions in prosecuting this adversary proceeding. As evidenced by the preceding sections of this Memorandum, the Court to some extent shares Debtor's indignation at the extreme lengths to which this adversary proceeding had to be litigated. It has some degree of sympathy for Debtor for the expense and uncertainty visited on him by Plaintiff's continued assertion of inconsistent and somewhat illogical positions. Plaintiff's pursuit of the harsh remedy of denial of discharge was inappropriate under all of the circumstances, and its arguments ultimately were unsupported by the record which it brought forward on these motions.

However, the Court cannot conclude that Plaintiff would have acted utterly without foundation in pursuing some other bankruptcy-law cause of action against Debtor on the evidence presented. In Section II of this Memorandum, the Court concluded that Plaintiff's complaint, to the extent it was appropriately founded in any section of the Code, should have been founded on 11 U.S.C. §§ 523(a)(2)(A), 523(a)(2)(B), or 523(a)(6). The judgment entered on Debtors' motion has disposed of the complaint in Debtor's favor entirely and with complete certainty.[16] However, when this ad-

---

**15.** The foregoing analysis avoids an all-too-evident procedural defect. As the pre-petition cause of action is essentially a counterclaim by Debtor against Plaintiff, it should have been initially joined in Debtor's answer and made fully subject to discovery during the course of the adversary proceeding, rather than sprung upon Plaintiff and the Court in the final frenzy of the cross-motions for dismissal. *See* FED.R. CIV.P. 13(a) and (b), *made applicable to this adversary proceeding* by BANKR.R. 7013. The improper procedural posture of this component of the request for sanctions, standing alone, merits its denial at this stage of this litigation.

**16.** As an aside, it should be noted that final disposition of an objection to discharge on motion for summary judgment—rather than after trial—should be the exception rather than the rule. More often than not, discharge objections involve questions of subjective motive and intent, which by their nature are particularly inappropriate for summary adjudication. *In re D'Avignon,* 25 B.R. at 843–44. Because discharge objections challenge acts which concern the very integrity of the bankruptcy process, they should ordinarily be tried on their merits unless it is clear that there is no evidence in the record which can support the complaint. *In re*

versary proceeding was commenced there was little or no published case law from the Judges of this Court on most of the issues joined by Plaintiff's complaint. The recent dates on most of the citations in this Memorandum show that there has been substantial case law development under 11 U.S.C. § 727(a) in most U.S. federal court districts and circuits only within the last two or three years. At least one of the holdings explained in Section II.A. of this Memorandum is a ruling of first impression in this District. Plaintiff's counsel may then assert with some justification that its position was initially well-founded, or at least reasonably arguable, whether it was warranted by then-existing law or by a good-faith argument for the extension, modification, or reversal of existing law. As a result, it cannot be said that either Plaintiff or its counsel violated the automatic certification of merit made by them under BANKR.R. 9011 by the execution and filing of the complaint in this adversary proceeding.[17] Too, it cannot be said that Plaintiff's counsel vexatiously multiplied these proceedings within the meaning of 28 U.S.C. § 1927 by prosecuting them through to the fall of 1986 or even (though it is a closer question) by attempting without compliance with the Local Rules to dismiss them without prejudice only after Debtor incurred substantial attorney fees in his defense. Plaintiff's counsel were ultimately ill-advised in casting the prayer for relief in Plaintiff's complaint as they did, and certainly have not gained great respect from the Court by their lawyering. Nonetheless, to impose sanctions on them would unfairly penalize them for a lack of litigation guidance resulting from a paucity of governing case authority which was not their fault. Also, to some extent, it may have an impermissible chilling effect on vigorous plaintiff's advocacy in meritorious discharge and dischargeability matters.

*Stuerke,* 61 B.R. at 626. Summary disposition here was appropriate on the record presented. It is definitely not appropriate where there is a genuine issue as to a subjective state of mind, which should be decided only after full cross-examination of material witnesses and opportunity for the Court to observe demeanor and to make appropriate credibility determinations.

Thus, an award of sanctions under federal law is simply not appropriate.

This leaves the possibility that Debtor's request for attorney fees and punitive damages arising solely out of the prosecution of this adversary proceeding may also constitute a state-law cause of action for abuse of process. To the extent that this cause of action was not joined at the commencement of this adversary proceeding or later via counterclaim or a specific prayer for relief in an original or amended answer, it is not properly addressed now for the reasons discussed *supra* at n. 15. Whether such a cause of action for abuse of process has continuing vitality given the conclusions stated in the preceding paragraph is an open question, too. In any event, this Court again has elected to abstain from deciding these issues. They arise exclusively under state law. There does not seem to be an independent basis of federal court jurisdiction for them, other than their genesis in Debtor's bankruptcy case. Finally, Debtor has simply not given this Court sufficient legal and factual development to fairly adjudicate his asserted entitlement to actual and/or punitive damages under an abuse of process theory.

Thus, in the Order for Judgment and Judgment entered on July 31, 1987, the Court abstained in full from considering and determining Debtor's request for damages from Plaintiff. Debtor should feel free to renew any meritorious claims against Plaintiff in the Minnesota state courts—subject to approval by his Chapter 7 trustee where appropriate—if he obtains a thorough and favorable evaluation from counsel after consideration of the conclusions reached in this Memorandum.

**17.** Now that the Court's sentiments are made abundantly clear by the entry and publication of this Memorandum, it will not be open to Minnesota counsel in general—and particularly to Plaintiff's counsel—to take the same positions in the future without considerable exposure to sanctions under BANKR.R. 9011.